Gladys C. Mertz et al., Respondents, *v.* Guaranty Trust Company of New York et al., Appellants.

**Trust — powers — deed transferring shares of corporate stock in trust without power of sale — merger of corporation with another and issue to trustee of stock of merged corporation subordinated to large issue of preferred stock — identity of old shares ended by merger — power of trustee to sell substituted shares.**

Where, by a deed of trust, a grantor assigned to a trustee a number of shares of the common stock of a corporation, in trust, to hold the shares and pay the dividends to designated beneficiaries, with remainder over, retaining no power of revocation and conferring no power of sale on the trustee, and thereafter, during the lifetime of the grantor, the corporation was consolidated with another and new stock issued, so that the trustee received eight times the number of shares in the new corporation that it had held in the old, subordinated, however, to a large issue of preferred stock which had gone exclusively to the stockholders of the merging corporation, the identity of the old shares was ended by the merger and the trustee had the power to sell what was acquired as a substitute. It was not subject to a duty to keep within the trust an interest in a business differing in substance from the interest in the business as it stood at the time of the foundation.

*Mertz* v. *Guaranty Trust Co.*, 221 App. Div. 752, reversed.

(Argued December 7, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 18, 1927, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

*Theodore Kiendl* for Guaranty Trust Company, appellant. The courts below erred in voiding the sale as the trustee's power and corresponding duty to sell the stock in the exercise of reasonable diligence, under the admitted facts, is clear. (*Matter of Morrison*, [1901] 1 Ch. 701; *Matter of Anson's Settlement*, [1907] 2 Ch. 424; *Northern Securities Co.* v. *United States*, 193 U. S. 197; *Matter of Franklin Trust Co.*, 84 Misc. Rep. 686; *Guaranty Trust Co.* v. *U. S. Steel Corp.*, 107 Misc. Rep. 720; 187 App. Div. 889; 226 N. Y. 693.)

*Selden Bacon* for George McNeir, appellant. The common stock of the Mohawk Carpet Mills was a different investment from the stock of the Shuttleworth Brothers Company and one which the trustee was not authorized to hold under the terms of its trust. The trustee, therefore, had full power to sell. (*Matter of Burr*, 48 Misc. Rep. 56; *Cannon* v. *Quincy*, 65 Misc. Rep. 399; *Matter of Franklin Trust Co.*, 84 Misc. Rep. 686; *Matter of Crawshay*, [1888] 60 L. T. 357; *Matter of Morrison*, [1901] 54 L. J. Ch. 388; *Matter of New*, [1901] 2 Ch. 534; *Matter of Anson*, [1907] 2 Ch. 424; *Ashurst* v. *Potter*, 29 N. J. Eq. 625; *Toronto Trusts* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1.) The requests of Mr. Clark that the trustee continue to hold the Mohawk stock could not and did not alter the duty and consequent power of the trustee to sell it. (*Adair* v. *Brimmer*, 74 N. Y. 537; *Wilkinson* v. *Parry*, 4 Russ. 272; *Newton* v. *Rebenack*, 90 Mo. App. 650; *Mulford* v. *Muich*, 3 Stockt. Ch. 16.)

*Henry K. Heyman* and *Arthur R. Wilcox* for respondents. The trustee had no authority or right to sell the eight hundred shares of Mohawk stock. (*Matter of*

*Franklin Trust Co.,* 84 Misc. Rep. 686; *Guaranty Trust Company* v. *U. S. Steel Corporation,* 107 Misc. Rep. 720; 187 App. Div. 889; 226 N. Y. 693; *Matter of Crawshay,* [1888] 60 Law Times, 357; *Matter of Morrison,* [1901] 1 Ch. 701; *Matter of New,* [1901] 2 Ch. 534; *Matter of Anson,* [1907] 2 Ch. 424; *Smith* v. *Lewis,* [1902] 2 Ch. 667; *Costello* v. *Costello,* 209 N. Y. 252.)

CARDOZO, Ch. J.   By a deed of trust made in January, 1913, Nelson S. Clark assigned to the defendant Guaranty Trust Company of New York one hundred shares of the common stock of Shuttleworth Brothers Company, a domestic corporation, in trust to hold the shares and to pay the dividends declared thereon to his daughter, Gladys Clark Mertz, during her life, and upon her death to pay such dividends to her children or issue *per stirpes* during the life of his granddaughter, Gladys Chesleigh Mertz, with remainders over.   No power of revocation was reserved by the grantor, and no power of sale conferred on the trustee.

In September, 1920, during the life of the grantor, Shuttleworth Brothers Company was consolidated with another corporation, McCleary, Wallin & Crouse, the name of the consolidated corporation being Mohawk Carpet Mills, Inc.   Of the Mohawk common stock 80,000 shares went to the Shuttleworth stockholders, and 120,000 to the stockholders in McCleary, Wallin & Crouse.   There was also an issue of $1,000,000 of preferred 6% stock, which went to the McCleary stockholders exclusively.   At the execution of the deed of trust, the hundred shares conveyed thereby represented one per cent of the entire capital stock of the Shuttleworth corporation.   After consolidation, the trustee held 800 Mohawk shares, representing a lower percentage of the common stock of the consolidated corporation, subject, moreover, to $1,000,000 of preferred stock, the preference applying alike to dividends and to principal.

Shortly after consolidation, the grantor (in October, 1920) transferred to the trustee 200 additional shares of the common stock of Mohawk Carpet Mills, Inc., to be held upon the same trusts.

Later, and in 1922 and 1923, he transferred upon the same trusts 442 shares of The Nairn Linoleum Company, which were afterwards exchanged for 3,010 shares of The Congoleum Nairn Company. The latter shares were sold by the trustee in 1924, with the consent of the grantor. No attack is made by the plaintiffs upon the validity of that sale, which, whether lawful or unlawful, brought large profits to the fund.

Upon the death of the grantor in April, 1925, the trust company determined upon a sale of the shares of Mohawk stock, 800 in number, which had come into the trust as a substitute for the 100 shares of Shuttleworth stock, the subject-matter of the fund at the time of its creation. The grantor, though never denying that there was authority to sell, had written the trustee in July, 1923, requesting that the Mohawk shares be retained after his death unless a sale met with the approval of two of his associates. The trust company had answered that it could not legally delegate its responsibilities as trustee, but that it would endeavor to procure an expression of opinion from the men named before disposing of the stock. With this assurance the grantor was seemingly content. Upon his death, the trust company pursued the course that it had marked. It endeavored, though without success, to procure from the men named a statement of their views as to the wisdom of a sale. Failing this, it endeavored, though again without success, to sell the 800 shares at public auction. When this was found to be impossible, it transferred them at private sale to the defendant McNeir, who acted for himself and for other members of a syndicate. The other shares, 200 in number, assigned by the grantor after consolidation was complete, are still subject to the trust. There is a

finding as to the 800 shares that the sale was at a price that was reasonable and adequate.

The question is one of power. The plaintiffs, the beneficiaries of the trust, maintain that the object of the trust was the collection of dividends upon specific shares of stock; that, in the absence of a power of sale, the trustee was not at liberty to dispose of the shares thus specifically conveyed; and that a like disability invalidates a sale of the Mohawk shares, which were acquired as a substitute in connection with the merger. On the other side, the defendants (the trustee and its vendee) maintain that the merger destroyed the identity of the shares; that the new shares were not the same either in substance or in form; that the trust company was not under a duty to retain them; and indeed that it would have exposed itself to criticism or even liability if it had kept them an unreasonable time and damage had resulted. The parties are agreed that the wishes of the grantor, expressed after the delivery of the deed, are of no controlling significance, since he had not reserved to himself the power to modify the trusts. The trial court held with the plaintiffs that the sale was unlawful, and gave judgment against the defendants directing restitution of the shares in kind. The Appellate Division affirmed by a divided court.

We think the identity of the Shuttleworth shares was ended by the merger, and that the trustee had the power to sell what was acquired as a substitute. " Every case of this sort must be looked at on its merits in order to see whether the investment is the same " (Per BUCKLEY, J., in *Smith* v. *Lewis,* 1902, 2 Ch. 667, 672; cf. KEKEWICH, J., in *Anson's Settlement,* 1907, 2 Ch. 424, and BUCKLEY, J., in *Matter of Morrison,* 1901, 1 Ch. 701). Here the ʲnvestment is radically different. The change of identity ̣as relation not to form only, but to substance. The tale is only partly told when we say that the consolidated corporation is a new juristic person. It is that, but

it is something more. The shares have been issued in new proportions and classified in new ways, as common and preferred. The old investment has been subordinated to alien priorities. The ancient venture has exposed itself to strange and unexpected hazards. The finding is that there has been a change in the " product manufactured," the " marketability of the product," the " capital structure," the " risks and vicissitudes," both actual and probable. We think the trustee was not subject to a duty to keep within the trust an interest in a business thus differing in substance from the interest in the business as it stood at the time of the foundation. The dividends to be garnered by fostering the one might be altogether different from those to be garnered by fostering the other.

A like problem would arise if a corporation, instead of resorting to a merger, were to sell its franchise and assets to another corporation for stock issued by the purchaser, as under the statute it may do, though subject to certain restrictions for the protection of shareholders dissenting (Stock Corp. Law, §§ 20, 21 [Cons. Laws, ch. 59]; *Matter of Timmis*, 200 N. Y. 177; *Murrin* v. *Archbald Consol. Coal Co.*, 196 App. Div. 107, 112). One might find it difficult in such circumstances to uphold a contention that the trustee would be under a duty to retain within the trust the shares thus given in exchange. Here as elsewhere distinctions of degree may mark the boundary between right and wrong. Distinctions of that order may exist between mere enlargements of corporate powers, or even changes of corporate structure, that are kept within the bounds of corporate identity — the same juristic person continuously existing — and changes accompanied by a severance of the corporate life — a new juristic person appearing on the legal scene.

Analogies are at hand to guide us to a solution. One of them may be found in the rules governing ademption. If certificates of these shares had been made the subject

of a bequest, there is little doubt that the gift would be adeemed if the shares were thus transformed before the will could take effect (*Matter of Brann*, 219 N. Y. 263, 267). What was said in the case cited is applicable here. " It may be that where the change is merely formal, as where a company is reorganized and there is a reissue of the shares, the identity of the gift will be held to be substantially preserved (*Mallam* v. *McFie*, L. R. 1912, 1 Ch. 29; *Turner* v. *Leeming*, L. R. 1912, 1 Ch. 828), but that is not this case " (*Matter of Brann, supra;* cf. *Slater* v. *Slater*, 1907, 1 Ch. 665.) Helpful also is the analogy of those decisions which define the duty of trustees under a power to lend the money of the trust to the members of a stated partnership. There are rulings that the power does not outlast a change in the firm members, whether the number of the members be less or greater than before (*Matter of Tucker*, 1894, 1 Ch. 724; *Smith* v. *Patrick*, 1901 A. C. 282; cf. *Bennett* v. *Draper*, 139 N. Y. 266).

More nearly decisive than any of these analogies are the provisions of the statute governing the process of consolidation (Stock Corp. Law, § 87). There runs through them all the recognition of the fact that consolidation transforms the essence of the enterprise. So it is that a shareholder, not voting in favor of consolidation, may have his shares appraised, and receive payment of the value. If the trustee, dissatisfied with the merger, had resorted to that remedy, the money would have taken the place of the shares as the subject of the trust. Failure to invoke one means of getting rid of an investment in an enterprise vitally transfigured, did not impair the right thereafter to have the benefit of another.

The case comes down to this: A trustee is without authority to invest in the shares of a business corporation, or even to continue such an investment made by another, unless authority so to do is conferred by the creator of

the trust (Pers. Prop. Law, § 21 [Cons. Laws, ch. 41]; Decedent Estate Law, § 111 [Cons. Laws, ch. 13]; *King* v. *Talbot*, 40 N. Y. 76; Perry, Trusts, §§ 454, 456). The creator of this trust did confer authority, and indeed imposed a duty, to continue the investment in the shares of a specified corporation so long as they continued, though even then authority to vary the investment might exist in the face of an emergency (Perry, Trusts, §§ 460, 466). He did not impose a duty, even if we could find that he conferred authority, to retain through every transmutation of form and substance whatever shares might thereafter be offered as a substitute. We do not need to determine at this time whether a sale of the substituted shares would always be a duty either immediate or unqualified. Support is not lacking altogether for the view that the duty to call in an investment no longer appropriate, is not always co-extensive with the liability growing out of an investment unlawful in its origin (*Matter of Chapman*, 1896, 2 Ch. 763, 767; *Costello* v. *Costello*, 209 N. Y. 252; *Matter of Wotton*, 59 App. Div. 584, 587; 167 N. Y. 629; cf. Perry, *supra*). Enough for present purposes that there is power, if not duty. A trustee finds upon his hands an investment, mandatory in its origin, but so changed as to be no longer mandatory, even if permitted. A power of sale attaches in such circumstances by implication of law (*Toronto Gen. Trusts Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; affd., on opinion below, 138 N. Y. 657; *Lockman* v. *Reilly*, 95 N. Y. 64, 71; *Haberman* v. *Baker*, 128 N. Y. 253, 261; *Costello* v. *Costello*, *supra*).

The judgment of the Appellate Division and that of the Special Term should be reversed, and judgment ordered in favor of the defendants dismissing the complaint with costs in all courts.

Pound, Crane, Andrews, Lehman, Kellogg and O'Brien, JJ., concur.

Judgment accordingly.