HERBERT L. MOELLER ET ALS., TRUSTEES (ESTATE OF CONSTAND A. MOELLER) *vs.* AUGUSTA J. ENGLISH ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued May 4th—decided June 12th, 1934.

*Charles D. Lockwood,* for the appellants (defendants Clara M. Johnson *et als.*).

*George W. Crawford,* for appellees (plaintiffs).

*Harrison Hewitt* and *James Wayne Cooper,* with whom was *Mary E. Manchester,* for appellees (defendants Edith Rogers *et als.*).

BANKS, J. Constand A. Moeller died June 1st, 1914, leaving a will executed February 18th, 1913, which provided that his entire net estate should be held in trust during the lives of his children, and upon the death of the last survivor be distributed to the then living grandchildren, with provisions for representation in certain contingencies. The net estate was left to trustees "with power to sell all my real and personal property (except my stock in the Narragansett Brewing Company of Providence, Rhode Island, which I direct shall neither be sold nor exchanged) and to invest and reinvest the avails thereof for the purpose of this trust." The complaint in this action, brought by the trustees under the will, alleges that the Narragansett Brewing Company has proposed a plan for the reorganization of the company which contemplates the creation of a new corporation with the same name and corporate objects, to which is to be transferred the property and assets of the present company, which plan involves the exchange of stock in the old company for that of the new company. The complaint alleges that questions have arisen as to the power of the trustees to participate in such plan, and asks the advice of the court as to (a) whether by the intendment and meaning of the will there was an express or implied prohibition against the exchange of the stock held by the trustees for stock in the new corporation, (b) whether the trustees were authorized and empowered to participate in the proposed plan of reorganization and (c) whether, in case such exchange is held to be prohibited by the terms of the will, such prohibition is not unreasonable, illegal and contrary to public policy. The trial court construed the will and held that it did not prohibit the exchange of the stock held by the trustees for that of the new corporation provided the nature of the business or the corporate ob-

jects of the present company were not changed, and that the trustees were empowered by the will, subject to review by the proper court, to participate in the reorganization, provided the nature of the business or the corporate objects of the present company or the proportion of stock held by the estate to the total stock outstanding be not changed by the plan. Certain of the beneficiaries of the trust have appealed from this decision.

From the finding, amplified by additional facts from the draft-finding, the following facts appear: Constand A. Moeller left an estate of upward of one million dollars. His estate owns 4165 shares of stock in the Narragansett Brewing Company which is carried on the inventory of the trustees at $375,000. The capital stock of the Brewing Company consists of 20,000 shares of stock of no par value, of which 15,000 shares have been issued. It has an indebtedness of $200,000, the holders of which have an option to convert it into 5000 shares of the unissued capital stock of the company. During the five-year period from 1915 to 1920, the company paid dividends which yielded a return of a little less than 12.9 per cent upon the value of the stock as carried in the trustees' accounts. The stock of the present company is held by a limited number of stockholders and is not listed on any stock exchange. As a result of the repeal of the Eighteenth Amendment there are reasonable prospects of a large and profitable market for its products. The directors of the company have authorized a meeting of stockholders to vote upon a proposal to sell its assets to a new corporation to be organized under the laws of Rhode Island. The new corporation is to have the same name as the present one, and is to assume all of its liabilities. It is to have a capital stock of 200,000 shares of a par value of $1 each, which are to

be delivered to the stockholders of the present corporation in exchange for the 20,000 shares of no par value stock now held by them, upon the basis of ten shares of new stock for each share of old stock. Upon the consummation of the plan, the trustees would hold 41,650 shares of the stock of the new corporation of a par value of $1 each instead of 4165 shares of the no par value stock of the present corporation. In the announcement of the plan made by the directors it appears that it is proposed to increase the number of shares of outstanding stock of the company, without the acquisition of any new capital, for the purpose of a wider distribution of the stock and its ultimate listing on one of the recognized stock exchanges, thereby providing a public market for the stock and a wider public interest in the company, and that counsel have advised that the most feasible way of doing this is to organize a new company with the same name to acquire the assets of the present company and assume its liabilities in exchange for the entire capital stock of the new company. The submission of the plan to the stockholders has been postponed until an adjudication is had upon the questions raised in this action.

At the outset the appellants question the right of the plaintiffs to the advice of the court upon what they claim is a moot question. Pointing out that there has been as yet no certificate of incorporation or organization of the proposed corporation and that its financial structure has not yet been determined, they say that the trustees are not asking for advice as to their power to invest the testator's funds in an existing corporation, but are seeking anticipatory judicial approval of action to be taken in the future in case the plan of action proposed by the directors should be carried out, and that therefore the case presents no definite question for determination. We are unable to agree with

this contention. The Moeller estate owns substantially one-fifth of the stock of this corporation, and this stock constitutes substantially one-third of the whole estate of the testator. It appears that the necessary accounting, legal and other technical work involved in organizing the new company has already been commenced. The question of whether the estate is to participate in the reorganization of the company is one which immediately confronts the trustees. If they have the right to exchange the shares now held by them for shares in the new corporation, it would follow that they might participate in the organization of that corporation. It would then be for them to determine whether the best interests of the beneficiaries of the trust would be served by their assistance in carrying out the plan and, if they judge that to be so, they might take an active part in shaping its scope. Delay in determining that question until after the completion of the organization of the new corporation might well be productive of practical difficulties detrimental to the best interests of the estate. It is apparent that the trustees cannot, with safety to themselves and to the rights and interests of others, either participate or refuse to participate in this reorganization without the advice of the court as to their power in the premises, and we do not deem that their request for such advice is prematurely made. As we said in *Sigal* v. *Wise*, 114 Conn. 297, 302, 158 Atl. 891, of the declaratory judgment sought in that case, "even if the right claimed in this case is a contingent one, its present determination may well serve a very real practical need of the parties for guidance in their future conduct."

The will of the testator specifically directs that his stock in the Narragansett Brewing Company shall neither be sold nor exchanged, though the trustees are

given power to sell any other real or personal property of his estate and invest and reinvest the proceeds. Participation by the trustees in the reorganization plan would necessarily involve an exchange of the stock now held by them for the stock of the new corporation, which the appellants claim would constitute a clear violation of the prohibition in the will. The fundamental question presented is whether participation by the trustees in the proposed reorganization of the Brewing Company, with the limitations imposed in the judgment of the trial court that the nature of the business, the corporate objects or the proportionate stock holdings of the estate be not changed, would involve such a sale or exchange of the stock held by the estate as to be within the prohibition against the sale or exchange of such stock contained in the will. We have first to consider the character of the transaction involved, and next, whether or not the testator intended by the use of this language in his will to prohibit such a transaction.

The action which the judgment of the trial court held that the trustees were empowered to take, was to participate in a reorganization of the Brewing Company which does not change the name or the nature of the corporation business, increase its liabilities or decrease its assets, and does not change the respective proportions in which the stock is now held, or change the relative rights of the stockholders in the management of the corporation. Upon the completion of the reorganization each stockholder will have ten shares of stock in the new corporation for each share of stock held by him in the present corporation, but the same proportionate interest as before in the same business undertaking. It is suggested by the appellants that this result might be accomplished under the corporation laws of Rhode Island by amendment of the arti-

cles of association of the present corporation, and that there may be some undisclosed reason for the formation of a new corporation, the necessity for which is not apparent. We are concerned here rather with the result accomplished than with the reasons for the adoption by the directors of the particular procedure proposed. If it is so that this result might have been reached by an amendment of the articles of association of the corporation, that fact would seem to support the position of the appellees that the change was one of form and not of substance. So far as appears from this record the option which the holders of the $200,000 indebtedness of the company have to convert that indebtedness into stock is one which they already possess without regard to the consummation of the reorganization, and the reduction in the proportionate stock holdings of the estate which would follow such conversion would not result from the reorganization. The question before us is as to the power of the trustees to participate in the reorganization and argument as to the advisability of such action is beside the mark. *McCarthy* v. *Tierney*, 116 Conn. 588, 592, 165 Atl. 807. Nor can the decree of the trial court be considered by implication as an approval of the advisability of the proposed exchange since that question was not before it.

It is of importance to consider whether the consummation of this plan would work a change of substance or only one of form in the stock holdings of the estate, whether its investment would be the same or would be substantially changed. As has been said, every case of this sort must be looked at on its merits to see whether the investment is the same. The test has been said to be "whether the new securities, which have come into the hands of the trustee in substitution for those received from the testator, are merely

the securities of the same corporation under another name or whether they are those of a distinctly different or materially altered business." *In re Herriman's Estate*, 254 N. Y. Sup. 158, 160. In the somewhat analogous case of *In re Smith*, L. R. (1902) 2 Ch. Div. 667, the will provided that the trustees might retain any part of the personal estate "in its present form of investment." A corporation in which the estate owned stock was wound up and its assets transferred to a new company under an arrangement by which the holder of each share in the old company was offered one ordinary share and one preference share in the new company. Mr. Justice Buckley said: "Of course, shares in the new company are not shares in the old company; they are different shares. But that is not really an answer. I ought to look at the substance of the transaction. . . . The new shares came to the trustees because the testator held the old shares, and for no other reason. . . . The altered thing that they have is the same investment in an altered form resulting from qualities inherent in the investment which their testator had." In *Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137, 159 N. E. 888, cited by the appellants, there was a consolidation of the company in which the trustee held stock with another company, as a result of which the trustee held a smaller percentage of the stock of the consolidated company than it had in the original company, and its stock was subordinate to a large issue of preferred stock which went to the stockholders of the other corporation exclusively. The court held that the change of identity in the stock holding was one of substance and not of form merely, resulting in a radically different investment, and the subordination of the old investment to alien priorities. The situation here is quite different from that in the *Mertz* case and more nearly analogous to that

in the *Smith* case. Upon the consummation of the reorganization, with the limitations imposed by the court, the Moeller estate would have substantially the same investment that it now has, its shares in the new corporation would represent the same proportionate interest in the same undertaking as those it now holds, and the change effected by the reorganization would be one of form and not of substance.

The proposed action does involve an exchange of the present stock holdings of the estate for stock in a new corporation. Was it the intention of the testator to prohibit such an exchange even though the result effected no substantial change in the investment of his estate? The testator was a man of affairs. About a third of his very considerable estate was invested in the stock of the Narragansett Brewing Company. It was a profitable investment, yielding during a five-year period after his death an average return of a little less than 12.9 per cent upon its value as carried in the accounts of the trustees. It is apparent that his fundamental purpose was to continue in his estate the interest which he had in this enterprise. That purpose he effectuated by forbidding the sale or exchange of the stock during the continuance of the trust. He was, however, a minority stockholder holding about one-fifth of the stock of the corporation. He could not compel the continuance of the corporate structure in the exact form in which it was at the time of his death. Under the corporation laws of Rhode Island two-thirds of the stock could accomplish, by amendment of the articles of association, the changes contemplated by the proposed plan and others more drastic. If the trustees do not object to the action of two-thirds of the stockholders in voting to sell all of the assets of the corporation they will be deemed to

have consented to such sale; if they do object they will be compelled to accept cash for their stock at an appraised price, the result of which amounts to a sale of the stock which the will prohibits. The testator no doubt was familiar with the powers of majority stockholders in a corporation in which he had so large an investment and must have contemplated the possibility, if not the probability, of a change in its financial structure which might involve the issue of new stock in substitution for that held by his estate without affecting the actual proprietary interest of the estate in the enterprise. Such an exchange would in no wise conflict with his underlying purpose that his interest in this business should be retained by the trustees during the continuance of the trust, and therefore would not constitute such a transfer of the stock as the testator intended to prohibit in this clause of his will. It is true that the new corporation will be a new entity and shares in it different securities from those now held by the trustees, and that the change in the corporate structure is such that dissenting stockholders have a right to withdraw their investment. But it seems to us that the testator had his mind fixed upon the industrial enterprise in which he held so considerable an investment rather than the particular corporate entity which operated it. We are satisfied that his intention was to prevent his trustees from parting with his investment in this enterprise by selling the stock or exchanging it for that in some other concern, but that he did not intend to prohibit an exchange of it for stock in a new corporation when the change was one of form only and the result would be to effectuate his underlying purpose that his estate should retain its interest in this particular business enterprise.

Appellants do not seriously pursue their assignments

of error in the rulings on evidence upon the brief or in oral argument, and we find no reversible error therein.

The trial court did not pass upon the validity of the prohibition in the will against the sale or exchange of the stock and, in view of our conclusion, it is not necessary to consider the claim of the appellees that it was not valid.

The conclusion of the court that the prohibition will remain effective as to any stock in the new corporation received by the trustees in place of that now held by them is not questioned by the appellees. It is consistent with the claim of the appellants as to the effectiveness of the prohibition in the will, and is questioned by them only by way of argument in support of their contention that the exchange would substitute new securities for those named in the will and would therefore violate the prohibition. Holding, as we do, that the exchange will effect no change in the character of the investment of the estate, such change as results being one of form only and not of substance, the new shares taking the place of the old, it necessarily follows that the prohibition in the will against the sale or exchange of the stock of the testator in the Brewing Company would remain applicable and effective as to the new stock representing the investment in this enterprise which it was his wish to have retained by his trustees as a part of his estate. Nor would there be such a change in the investment as would make inapplicable the statutory authority of the trustees to hold the stock in the new corporation as securities received from the testator. General Statutes, § 4837. To hold otherwise would be to construe the authority given by the statute as ceasing to be effective whenever, after the death of the testator, a mere formal change was made in securities received

by a trustee, even though that change did not affect them in substance. See *Peirce, Petitioner,* 25 R. I. 34, 54 Atl. 588.

There is no error.

In this opinion the other judges concurred.