In the Matter of the Estate of WILLIAM H. ROLSTON, Deceased.

Surrogate's Court, New York County, February 25, 1937.

*Mitchell, Taylor, Capron & Marsh [Edwin W. Cooney* and *Edward L. Hunt, Jr.,* of counsel], for the accounting trustee.

*Gregory, Stewart & Montgomery [Charles G. Stevenson* and *Julian A. Gregory* of counsel], for Helyn Rolston Wilson, objectant.

*Saul S. Streit,* special guardian.

*Walter W. Law,* for Adele R. Wilson, objectant.

FOLEY, S. These matters involve the confirmation of the report of the referee appointed in this contested accounting proceeding initiated by the City Bank Farmers' Trust Company, as trustee under the will.

Objections to the account were filed on behalf of the life tenant of the trust and the remaindermen, and the issues raised by the objections were referred to the referee to hear and determine. Certain of the objections were disposed of before the referee by stipulation of the parties, others were withdrawn. Two questions remained for his consideration.

(1) The first issue presented for determination is whether the trustee should be surcharged with respect to one hundred shares

of stock of the National City Bank of New York, presently held as part of the corpus of the trust.

Under paragraph fifth of the will, the testator restricted his trustee in the making of new investments to mortgages on real estate located in the city of New York and to investments legal for savings banks. By the provisions of his testamentary instruments, he authorized the retention of securities possessed by him at the time of his death, for by a second codicil to the will he provided: " It is my desire that the investments of said trust fund shall, during the life of my said daughter, Helyn Rolston Wilson, only be changed with her consent in writing." Mrs. Wilson is the life tenant of the trust and one of the objectants here.

The referee correctly held that the restrictions on the power and authority of the trustee to sell or change investments was mandatory, and not precatory or permissive. Although the paragraph of the codicil quoted above begins with the words, " It is my desire," its entire context evidences the intention to require the written consent of the daughter as imperative. (*Matter of City Bank Farmers' Trust Co. [Olcott]*, WINGATE, S., 161 Misc. 890.) This purpose is particularly emphasized by the requirement that change should be made only with her consent in writing. In short, the testator said to the trustee, " You shall not sell or exchange the securities which I have left at my death, except by written permission of my daughter." The trustee was thereby protected against a surcharge if the daughter refused to give such consent. If the trustee, however, sold or exchanged without the written consent of the daughter, it became liable to a surcharge. Furthermore, I hold that under the terms of the will the trustee was not required to urge the life tenant to give her consent in writing. Information or disclosure to her of the advisability of a sale or exchange might have been required. Her reasons for her refusal or non-action, where a full disclosure of the facts was made to her, are immaterial. The testator himself imposed a condition precedent, and under his plan his daughter alone possessed the widest discretion to give her written authority or to refuse it. Moreover, under his mandate, her non-action absolved the trustee from attacks by every other person interested in the estate.

The evidence before the learned referee disclosed that 125 shares of the Farmers' Loan and Trust Company were received by the trustee from the executors on July 16, 1925. They were then valued at $425 per share. The trustee continued to hold the stock until April 3, 1929, when seventy-five shares were sold, fifty of them at $1,900 per share and twenty-five at $1,905 per share. The

following day, on April 4, 1929, thirty shares were sold at $1,900 per share. There remained within the trust twenty shares of the stock of the Farmers' Loan and Trust Company, which the corporate trustee, as sole surviving trustee, continued to hold, in the expectation of a continued rise in the market value of the stock. These twenty shares were converted into 100 shares of the National City Bank which are the subject of the dispute here. The apparent cause of the rise in the price of the stock was stated by the referee to be the information of a plan to merge the Farmers' Loan and Trust Company and the National City Bank, and the contemplated exchange of five shares of the bank stock for each share of trust company stock. It appears that the information of the expected merger was in the possession of the corporate trustee as early as March, 1929, and that the twenty shares were retained by the trustee with the full knowledge and acquiescence of the life beneficiary, for the purpose of exchanging them for the stock of the National City Bank.

The referee has reported that on May 9, 1929, the stock deposit and reorganization agreement between the companies was promulgated; that in June, 1929, the trustee wrote to the life beneficiary that the twenty shares of the trust company stock had been deposited under the terms of that agreement; that on July 22, 1929, the plan of organization became effective and the trustee received 100 shares of the stock of the National City Bank in exchange for the twenty shares of the trust company stock; that at the time of such exchange the stock of the National City Bank was selling for approximately $400 a share and that it continued to rise thereafter, until it reached a high on October 18, 1929, of $561 per share, and, subsequently, steadily declined, until at the time of the trial its market price was approximately thirty-eight dollars per share.

The referee has found that the corporate trustee should be surcharged in the sum of $38,000, which the twenty shares of stock of the Farmers' Loan and Trust Company would have brought had they been sold in April, 1929, at the time that the 105 shares were sold. He has allowed in reduction of that surcharge the present market value of the stock of the National City Bank. I am in accord with the learned referee in his general conclusion that the trustee should be surcharged. I am not, however, in accord with him either as to the specific grounds of liability of the trustee, or as to the method of computing the amount of the surcharge. He erroneously fixed the liability of the trustee because of its failure to sell the shares of stock. His theory was that it remained at all times the duty of the trustee to dispose of the shares of stock of the trust company because they were non-legals. Thereby he dis-

regarded the terms of the will which compelled the daughter to consent before the trustee might change the investment.

My determination of the corporate trustee's liability is based upon the illegal and unauthorized exchange of the stock of the Farmers' Loan and Trust Company for the stock of the National City Bank. *First*, the necessary written consent of the life beneficiary to the exchange was not procured. *Second*, the trustee, by depositing the stock for exchange, made a new unauthorized investment. (*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137; *Stark* v. *National City Bank of New York*, 161 Misc. 51.) The referee has found, upon the evidence, that the two institutions were of such different characters that there was a complete change of investment brought about by the exchange of the stock of the one for the stock of the other. The referee has found that the trust company was a New York corporation under the supervision of the Superintendent of Banks of our State; that the bank was a Federal corporation under the supervision of the United States Comptroller of the Currency; that the trust company conducted a conservative trust and banking business with one branch office in New York, one in London and one in Paris; that the National City Bank maintained branches in many foreign countries. At the time of the merger the bank had a subsidiary, the National City Company, which did a large business, more or less speculative, in underwriting and dealing in securities. The general business of the bank was far different from that of the conservative trust company. By the affiliation of the two companies, the proportionate voting control was materially changed. As stated by Chief Judge CARDOZO, in *Mertz* v. *Guaranty Trust Co.* (*supra*): "Here the investment is radically different. The change of identity has relation not to form only, but to substance. The tale is only partly told when we say that the consolidated corporation is a new juristic person. It is that, but it is something more. The shares have been issued in new proportions and classified in new ways, as common and preferred. The old investment has been subordinated to alien priorities. The ancient venture has exposed itself to strange and unexpected hazards. The finding is that there has been a change in the ' product manufactured,' the ' marketability of the product,' the ' capital structure,' the ' risks and vicissitudes,' both actual and probable. We think the trustee was not subject to a duty to keep within the trust an interest in a business thus differing in substance from the interest in the business as it stood at the time of the foundation. The dividends to be garnered by fostering the one might be altogether different from those to be garnered by fostering the other."

The will required that new investments be made only in mortgages on real property situated in the city of New York or in securities legal for savings banks. Investment in the shares of the National City Bank was a non-legal investment and, therefore, prohibited by the testator. The exchange transaction, which was made without the written consent of the daughter of the testator, constituted an improper and unlawful investment, a breach of trust and a violation of the terms of the will. (*Mertz* v. *Guaranty Trust Co.*, *supra;* *Stark* v. *National City Bank of New York*, *supra*.)

The referee has computed the surcharge upon the theory that the trustee should have sold the twenty shares of the trust company stock at the times that it sold the 105 shares, in April, 1929. He has fixed this sum at $38,000. The selection of these dates is erroneous, because the duty to sell did not then exist and the written consent of the life tenant to the sale had not been obtained. Moreover, at or prior to the dates fixed by the referee, there had been no official announcement of the corporate merger or affiliation.

Under the method of ascertaining the damage arrived at by the surrogate, it is apparent from the proof that the surcharge will be increased. The amount of the surcharge must be computed upon the value of the stock upon the date of the breach of trust, when the original securities were improperly converted. That date I hold to have been the day when the shares of the original stock were formally deposited for the purpose of exchange. Proof of the actual date of the deposit is directed to be filed by affidavit, or by a proper concession in a stipulation. The record does not appear to contain such date. The parties are further directed to file affidavits showing their estimates of the market value of the trust company stock upon such date and the facts upon which such estimates are based.

I hold further that the life beneficiary is estopped by her acquiescence and conduct from receiving the income earned by the corpus of the trust as increased by the surcharge. No proof of any misrepresentations to the daughter by the trust company nor proof of coercion intended to prevent her giving her consent in writing to a sale or exchange of the stock has been produced. The referee has correctly found that the life beneficiary, with full and complete knowledge and understanding of all the material facts pertaining to the exchange of the stock, orally consented to that transaction and acquiesced in it and that she has thereby waived her right to assert liability on the part of the trustee. She cannot complain or take advantage of a situation which she created by not consenting in writing. (*Matter of Garvin*, 256 N. Y. 518, at p. 520; *Woodbridge* v. *Bockes*, 59 App. Div. 503; affd., 170 N. Y. 596; *Matter of Hall*,

164 id. 196; *Matter of Niles*, 113 id. 547; *Sherman* v. *Parish*, 53 id. 483, 492; *Blair* v. *Cargill*, 111 App. Div. 853, 858; *Matter of Chaves*, 143 Misc. 868; *Matter of Illfelder*, 136 id. 430.) The rights of the ultimate beneficiaries must be preserved.

The pecuniary liability of the trustee will be fixed in the decree after the submission of the foregoing affidavits as follows: (a) Such liability will be fixed upon a cash basis. Upon the terminatior of the trust, that amount of cash will become payable to the remaindermen. Thereby the rights of the remaindermen will be protected. (b) The trustee is entitled to recoupment in reduction of the surcharge by delivering to itself the 100 shares of stock of the bank, which I have held to have been improperly converted. (*Matter of Hall*, 164 N. Y. 196.) (c) As found by the referee, however, and confirmed herewith, no part of the income derived from the amount required to be restored to the corpus may be paid to the life beneficiary, except so much as may be actually earned upon the 100 shares of National City Bank stock. (d) If the daughter of the testator consents in writing (pursuant to the terms of the will as they now apply specifically to her) to the sale of the bank stock, the net proceeds of the sale may be brought back within the trust and the ultimate cash liability of the trustee reduced by the amount of such proceeds. Such proceeds may be reinvested in legal investments and the income paid to the daughter, as life tenant.

(2) The remaining question involves the claim of the objectants that the trustee should be surcharged with respect to an investment of $5,000 made by it on July 6, 1929, in a bond and mortgage of the " Madison-60th Street Corporation," the investment being presently held in the capital of the trust by way of a proportionate interest in the securities of 650 Madison Avenue Corporation, a corporation formed to take title to the real estate formerly securing the mortgage and acquired through foreclosure. The referee's finding that the investment was not unlawful, improper or improvident and that the trustee was not negligent is sustained by the evidence. His finding that the amendments of 1932 (Laws of 1932, chap. 623) to section 111 of the Decedent Estate Law and to section 21 of the Personal Property Law did not expressly limit the organization of corporations for the purpose of holding title to foreclosed properties to individual trustees, but applied also to corporate trustees, and that the organization of the " 650 Madison Avenue Corporation " was authorized by law, is correct and is likewise confirmed. (*Matter of Lockwood*, 161 Misc. 877.)

The report of the learned referee will be confirmed except as modified by this decision.

Submit affidavits as directed by the surrogate and submit decree thereafter on notice settling the account accordingly.