*867 OPINION OF THE COURT
Renee R. Roth, S.
Incident to their intermediate accounting, the trustees of an inter vivas trust, established in 1966 by Robert A. Pinkerton, request the court to construe the provision appointing successor trustees, which requires that one of the three acting trustees be the president of the settlor’s security company, Pinkerton’s Inc., no longer owned by the trust.
The original trustees were the settlor, his wife, Louise Cutter Pinkerton, and Morgan Guaranty Trust Company of New York (Morgan). The trust was funded primarily with Mr. Pinkerton’s shares in his well-known security company, Pinkerton’s Inc. (the Company). Established for the life income benefit of the settlor, the trust agreement provided that upon his death the fund was to be divided into a marital trust for his wife and a residuary trust for the life income benefit of their daughter Ann.
When Mr. Pinkerton died in 1967, he was succeeded as trustee by Edward J. Bednarz and the marital and residuary trusts were created. Mrs. Pinkerton resigned as trustee in 1979 and was succeeded by George J. Gillespie. At Mrs. Pinkerton’s death in 1983, the marital trust terminated. The residuary trust at issue here continues to be administered by Bednarz, Gillespie and Morgan for Ann’s benefit.
The expectation that Mr. Bednarz will resign in the near future gives rise to the question concerning the appointment of his successor. The trust agreement makes the following provision for selecting successor trustees. The successor to the settlor’s wife is to be appointed by the trustees in office when the vacancy occurs and is permitted to serve until he reaches age 70 or becomes an employee of the Company. Although allowed to be on the Company’s Board of Directors, this trustee clearly was not intended to occupy a managerial position in the Company.
Such is not the case, however, with respect to the line of succession to the settlor’s position as trustee. Mr. Pinkerton expressly named Edward J. Bednarz as his successor and requested that the Board of Directors of the Company select Mr. Bednarz to succeed him as president of the Company. The trust agreement further provides that each future appointee to Mr. Bednarz’ position as trustee must not only be the president of Pinkerton’s Inc., but may serve as a trustee only so long as he continues to serve as president. Thus, each *868 trustee in this line was to hold a specific position in the Company. This line is clearly distinguishable from that of the widow’s successors who are prohibited from working for the Company.
At Mr. Pinkerton’s death in 1967, the principal of the trust was valued at $37 million, consisting mainly of shares in the Company. Although Mr. Pinkerton expressly authorized the trustees to hold these securities (and to purchase more), he did not restrict their sale. The trust held a controlling interest in the Company by reason of such securities until they were sold by the trustees in a buyout in 1983. The trust did not retain any financial interest in the Company and no one interested in the trust is involved in its operation.
The Company continues to provide the same type of security and investigative services, which appears to satisfy the settlor’s definition of Pinkerton’s Inc. as "any corporation that succeeds to all or any part of its business”. Petitioners contend, however, that the purpose of having the president of the Company serve as a trustee no longer exists.
The doctrine of equitable deviation has been applied by our courts to allow departure from the terms of a trust instrument where there has been an unforeseen change in circumstances that threatens to defeat or substantially impair the purpose for which the trust was created (Matter of O’Donnell, 221 NY 197; Matter of Young, 178 Misc 378; Matter of Pulitzer, 139 Misc 575, affd 237 App Div 808; 2A Scott, Trusts § 167 [4th ed]). In discussing the equity power of the court in such instances, Judge Cardozo observed that where "[a] trustee finds upon his hands an investment, mandatory in its origin, but so changed as to be no longer mandatory, even if permitted * * * [a] power of sale attaches in such circumstances by implication of law” (Mertz v Guaranty Trust Co., 247 NY 137, 144).
Although our courts have been liberal in permitting such deviations when they are not in conflict with the law (see, e.g., Matter of O’Donnell, supra; Matter of Young, supra; Matter of Pulitzer, supra), the doctrine has been applied only to prevent serious loss in cases where there were limitations on trustees’ investment powers. But the rationale of this doctrine is equally applicable to the circumstances of the instant case and does not conflict with any law. The trustees here do not seek relief from a mandatory investment policy but from the mandatory appointment of a successor fiduciary whose pres *869 ence, because of changed circumstances, would constitute an unwarranted imposition on the trust and be so foreign to the settlor’s intention as to justify the equitable intervention of the court.
When the instrument is read as a whole, the intent of the settlor is obvious. He linked the future of this trust to the success of the Company by funding the trust with securities that enabled the trustees to control the Company he had built and that carried his name. Each of the three trustees was chosen for his or her respective expertise in accomplishing the settlor’s goals, namely, an institution with trust management experience, an individual independent of Pinkerton’s Inc. to be responsive to the income beneficiaries and the chief financial officer of Pinkerton’s as the link between the trust and the operation of the Company, the primary asset of the trust.
It is clear that Mr. Pinkerton did not anticipate the sale of the Company. Replacing Mr. Bednarz with future presidents of the Company would not serve the purpose intended by the settlor. On the contrary, appointing an individual who is a complete stranger to the trust would defeat Mr. Pinkerton’s purpose and destroy the balance he meant to achieve in trust management.
Based upon the foregoing, the conditions for the selection of a successor trustee for Edward J. Bednarz set forth in article VIII (D), (E) and (F) of the trust agreement are waived. When he is no longer a trustee, the two remaining trustees may continue to serve without appointing a successor (SCPA 1502 [1]).