[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal taken initially by the plaintiffs Pick-A-Pearl, Inc., Marlene Wadsworth, and Dolores Zike from the assessment of damages in the amount of $11,115 paid by the defendant[1] for the partial taking by eminent domain on June 16, 1993, of their property situated on the westerly side of and known as No. 1343 Blue Hills Avenue, in the Town of Bloomfield, pursuant to General Statutes Sections 13a-73(b) and 13a-73(e)[2] for the layout, alteration, extension, widening, change of grade, drainage and improvement of the state highway known as Route 187.
Said premises taken are more particularly bounded and described as follows: Northeasterly by Blue Hills Avenue, Route 187, 200 feet, being the entire frontage of the plaintiffs' property; Southeasterly by land n/o/f/o Alvin E. Shoham et al., 32 feet, more or less; Southwesterly by the plaintiffs' remaining land, 197 feet, more or less, being designated "Taking Line" on the map hereinafter referred to; and Northwesterly by land n/o/f/o C.I.Z. Realty, 32 feet, more or less.
Said parcel contains 0.146 of an acre, more or less, together with appurtenances, all of which appear on a map entitled: "Town of Bloomfield Map Showing Land Aquired [Acquired] From Pick-A-Pearl, Inc. et al by the State of Connecticut Widening, of Conn. Route 187 Scale 1" = 40' May 07, 1992 Dept. of Transportation Bureau of Engineering and Highway Operation." CT Page 10891
Said premises were taken together with the following easement and right on portions of the plaintiffs' remaining land:
1. A full and perpetual drainage right of way easement within an area of 0.001 of an acre, more or less, located between and opposite approximate Station 320+05 and Station 320+17 left, Construction Center Line Rte. 187, as more particularly shown on said map.
2. A right to construct driveway within an area of 0.001 of acre, more or less, located between and opposite approximate Stations 321+09 and 321+22 left, Construction Center Line Rte. 187, as more particularly shown on said map, which right shall terminate automatically upon completion of the work by the state.
On April 20, 1994, the first mortgagees, Gerard L. Talbot and Mickolina Talbot, moved to intervene as additional parties plaintiff in this eminent domain proceeding.[3] This motion was granted by the court on November 1994, and the intervenors joined in this appeal.
The plaintiffs' property is located in the northeastern section of town. It is zoned I-2 (Restricted Industry Zone). Before the take the parcel contained 1.98 acres with 200 feet of frontage along Blue Hills Avenue, a well traveled secondary state highway, Route 187, that begins at Albany Avenue in northwestern Hartford. Its topography slopes gently above street grade and is level in the rear. A brook is located at the northeasterly corner of the property. Electricity, telephone, sewer and water service are available to the property, although water is currently provided by a well. Site improvements include a paved driveway, a gravel parking area, concrete walls, a picket fence enclosure, a rail fence, light post and landscaping
The site is improved with a 1,300 square foot cape dwelling, of wood frame construction built in 1951. The first floor area is 880 square feet and the second floor is 420 square feet. In addition there is a basement area of 880 square feet. There are six rooms and two lavatories. The residence was previously converted to general office use. To the rear of the structure is a 400 square foot garage with a dirt floor.
Uses permitted in the I-2 zone are restricted to industrial and office uses. Retail and personal service uses are not allowed unless primarily industrial. Offices are allowed in the I-2 zone. Residential use is not permitted within this zone. The former residential use of the subject property was a legally conforming use. Its subsequent conversion to office use was done illegally without authorization. Because of this change from a CT Page 10892 nonconforming residential use to an illegal office use, a reverter to a residential use of the property would no longer be permitted, the nonconformance chain having been broken.
Before the taking, the property conformed to the building and area requirements of zoning. The taking of the greater portion of the front yard reduced its setback to less then the 40 feet required. On January 12, 1994, the plaintiff owners of the property requested a 10 foot front yard variance from this requirement. The hardship alleged was the creation of this violation by the state's taking of the remainder of the front yard. The zoning board of appeals at its meeting on February 7, 1994, found "no legal hardship" after a hearing and denied the application. Subsequently, on March 14, 1994, the zoning enforcement officer issued a cease and desist order prohibiting the use of the subject property in a manner inconsistent with the zoning regulations and advising that the property owners make application to the town plan and zoning commission for site plan approval and to the building official for the necessary building permits.
In the opinion of the plaintiffs' appraiser, John B. Flint, the highest and best use of the subject property is the continued office use. The defendant's appraiser, an employee of the Department of Transportation, made two appraisals. In the first valuation, as of September 29, 1992, dated October 15, 1992, he noted that the subject property was improved with a single-family house presently being used for a commercial office in conformity with the zoning regulations, which he then considered its highest and best use. In the second valuation, as of June 16, 1993, but dated August 10, 1994, he stated that the latest use of the house for a commercial office codes and no illegal use because it has not been brought up to current building codes and no permits have been issued by the town. At this time he considered its highest and best use to be industrial development.
The court finds the highest and best use of the subject property to be for industrial and office use in a manner consistent with the zoning regulations and in compliance with the building codes.
The plaintiffs' appraiser utilized the sales comparison approach to estimate the value of the subject property before the taking. Using as comparable two recent sales in Windsor and two in Bloomfield, he concluded the value of the subject in its entirety to be $140,000. Additionally, the subject land was also valued separately by the sales comparison approach at $102,000 and the site improvements by the cost approach at $3,000. Deducting, these estimates from the total property valuation he estimated the building value before the taking at $35,000.
In estimating the value of the subject property after the taking, the CT Page 10893 plaintiffs' appraiser acknowledged that without the front yard variance sought by the owners, site plan approval of the property is not possible and the existing building cannot be legally used. The nonconforming front yard resulting from the taking eliminates the utility of the building. In his opinion, the highest and best use for future industrial and office development requires the demolition of the building.
The valuation of the subject property after the taking is premised on that hypothesis. Utilizing the same comparable industrial site sales as he used previously in the before taking valuation of the land, he estimated the value of the reduced parcel to be $94,552. Since the building provides no utility, the estimated cost of demolition in the amount of $4,500 was deducted from that valuation, reducing the estimated site value to $90,000 rounded. The contributory value of the site improvements after the taking is limited primarily to the landscaping estimated to be $1,000 for a total property value of $91,000. No value was indicated for the easement or temporary right taken. Damages from the taking, therefore, were calculated to be $49,000.
The valuation of the subject property by the defendant's appraiser as of September 29, 1992, dated October 15, 1992, estimated damages in the amount of $11,115. It was the basis for the assessment made upon the taking on June 16, 1993. As previously cited, at that time he found the property to conform to the zoning regulations. He also considered the present use for commercial offices to be the highest and best use. Based on three comparable sales of industrial zoned land, the subject land before the taking was estimated to be worth $59,000 per acre for a total land value of $116,820. In his opinion the house was not affected by the taking. For that reason he assigned an "X" value to the building. The fair market value of the subject property before the taking was estimated at $119,315 plus "X".
In this appraisal damages were computed as follows: taking of 0.146 acres at $59,000 per acre — $8,614; drainage right of way — $6; driveway — $393; split rail fence — $102; grass and trees — $2,000; total damages — $11,115. In the after taking valuation, the defendant's appraiser estimated the unencumbered land to be worth $108,147 and the small portion encumbered by the drainage right of way $53, for a total valuation of the subject property at $108,000 plus "X". Damages resulting from the taking, therefore, were estimated at $11,115, the amount of the condemnation award subsequently paid.
The defendant's second appraisal, purporting to be an update of valuation and damages as of the date of taking, was made fourteen months after the taking, and eight months after this proceeding was begun. It served as a vehicle to recite post-taking zoning activity in apparent CT Page 10894 rebuttal to the plaintiffs' claim of severance damages. In its introductory comment, reporting as before the present commercial office use of the single family house, the following statement was added at this time: "The use is an illegal use because the house has not been brought up to current building codes and no permits have been issued by the town."
The prior statement of zoning conformity was now changed to non-conformity status. The highest and best use was changed from present use to industrial development. In addition, water and sewer utilities were listed as available to to the property. Another change in this appraisal was made in its scope. Where previously the appraiser had stated that the house is not being affected by the acquisition, he now reported that the house is an interim use until the land value exceeds the value of the house and land and is not being affected by the acquisition.
In this later appraisal report, the fair market value of the subject property before the taking was estimated at $119,300 rounded plus "X", using the same comparable sales as before. Slight adjustments were made in the cost of the driveway and split rail fence. The after taking value was estimated at $108,200 plus "X". The resulting damages were now slightly reduced to $11,100 rounded.
In the preamble to the after taking description of the property, the appraiser added this hearsay statement: "In a conversation with town officials, a zoning variance (for the front yard setback violation resulting from the defendant's taking) was denied because the owner could not prove a legal hardship because of the converted illegal use. The property will be considered legally non-conforming in three years and the town will take no action against the property owner because of the State's acquisition." In the appendix to this report there are attached a copy of the letter of denial of variance from the zoning board of appeals to the plaintiffs dated February 8, 1994, and of the zoning staff's investigative report to the board.
Since our concern in eminent domain is the valuation of the subject property at the taking and any damages resulting thereby, the factors of zoning and building code conformance at the time of taking are relevant to the condemnation proceeding insofar as they affect such valuation and damages. Post-taking zoning activity or building code deficiencies are of no significance in the court's determination of damages at taking, except only insofar as they may confirm the status of zoning and building code compliance at the time of taking and are evidence of elements in any change of market value relating to the valuation of the property and damages to it. CT Page 10895
That the subject property was illegally used under the zoning regulations at the time of taking is admitted by the plaintiffs. The owners apparently had used the property for offices without obtaining site plan approval as required by the town. Prior to that the subject had been a legally nonconforming residence. Residential use is not allowed in the subject's industrial use since prior to the taking. Their appraisal reflects that site plan approval and interior structural improvements to meet the building code are required on the subject property.
Zoning enforcement action had not been taken by the authorities prior to the taking. Zoning activity was initiated post-taking by the plaintiffs' application for a front yard and appropriation of its conformity to zoning. Its denial on February 7, 1994, was then followed by the zoning enforcement officer's cease and desist order of March 14, 1994.
Likewise, there is no evidence that the town building authorities had condemned occupancy of the building or pressed the plaintiffs into building code compliance. The building code violations claimed by the defendant are not of a serious nature affecting the health or safety of the occupants. The structure was built in 1951 in apparent compliance with the building code then in force. The alleged code violations may continue to lie dormant as they have to this time until a building permit is sought for structural changes.
That the prior conforming front yard of the subject property has been reduced by thirty-two feet, more than one-half of its former setback, resulting in the zoning violation, is admitted by the defendant. That the street frontage has been reduced from 200 feet to 197 feet is self-evident from the taking.
The defendant's appraiser found no severance damage. His valuation was limited to the fee interest in land only. No buildings were evaluated. In his opinion they were unaffected by the taking.
In his first appraisal he acknowledged that after the taking the front yard would be nonconforming and discussed it no further in this report. It apparently had no other special significance at that time. In his second appraisal, made after the appeal had been taken from his prior damage assessment, he reported that the plaintiffs' application for a front yard variance had been denied on February 7, 1994. He had discussed this violation with zoning staffers and included in his appraisal report a copy of their notes to the zoning board of appeals. With this post-taking information, he reported the denial of the variance and that the property "will be considered legally non-conforming in three years and the town will take no action against the property because of the State's CT Page 10896 acquisition."[4]
The court in this case is not required to speculate as the significance of the front yard zoning violation created by the taking. It now has the the benefit of hindsight which it may consider in determining the damages at taking. See Bowen v. Ives, 171 Conn. 231, 238-39, 368 A.2d 82 (1976).
The court disagrees with the conclusion of the defendant's appraiser. "When part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and for any damages visited upon the remainder which result from the taking. Bowen v. Ives,171 Conn. 231, 236, 368 A.2d 82; Meriden v. Highway Commissioner,169 Conn. 655, 659, 363 A.2d 1091. Damages are measured by application of the `before and after rule.' Ibid. The court must `determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter.' Lefebrve v. Cox,129 Conn. 262, 265, 28 A.2d 5. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Bowen v. Ives, supra; Budneyv. Ives, 156 Conn. 83, 88, 239 A.2d 182; Holley v. Torrington, 63 Conn. 426,
433, 218 A. 613." Plunske v. Wood, 171 Conn. 280, 283-84.
The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. Birnbaum v. Ives, 163 Conn. 12, 20,301 A.2d 262; Bennett v. New Haven Redevelopment Agency, 118 Conn. 513, 516,172 A.2d 612. "In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of the circumstances, the evidence, his general knowledge and his viewing of the premises.' Birnbaum v. Ives, supra, 21." Bowen v. Ives,
supra, 239.
The different elements of damage to the remaining property recoverable in addition to direct damages are as numerous as the possible forms of injury to it, but they must be reasonably said to have affected its market value just after the taking, See Bowen v. Ives, supra, 231, 238. The plaintiffs' property's greater value at taking came from its future potential industrial and office uses, and not from the continuance of its former residential use dating back to 1931. CT Page 10897
The elements of the plaintiffs' direct and severance damages due to the taking on June 16, 1993, are: (1) the loss of fee to about 0.146 of an acre along the entire 200 feet of the property frontage for a depth of 32 feet; (2) a reduction of the front yard by about 32 feet, more than one-half of its former length, resulting in a zoning violation for which the zoning board of appeals refused to grant a variance; (3) a reduction of the street frontage from 200 feet 197 feet; (4) physical loss of site improvements and landscaping; (5) a full and perpetual drainage right of way easement within an area of about 0.001 of an acre at the southeasterly corner of the new street frontage; and (6) a decrease in both utility and marketability of the remainder.
After viewing the site of subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $110,000, and that the after taking value is $116,000. Damages, therefore, are assessed at $24,000.
Judgment may enter for the plaintiffs in the sum of $21,000, less $11,115 already paid, or an excess of $12,885, with interest at 9% per annum, being the rate of interest payable on the owners' first mortgage to the mortgagees, from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $2,000.
William C. Bieluch State Trial Referee