# FIRST DEPARTMENT

AT

# GENERAL TERM,

## April, 1892.

64   1
138a 657

THE TORONTO GENERAL TRUSTS COMPANY, as Trustee, Appellant and Respondent, v. THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Respondent, and THE NATIONAL BANK OF COMMERCE, in New York, Appellant and Respondent.

*Trustee — receiving fluctuating securities — effect of a power to sell on the death of the life tenant — not a limitation on the power to sell stocks before the death — liability of a transfer agent.*

George H. Dunscomb died leaving a will and codicil by which he gave to his widow for life the income of all his property, which he left upon her death to his child or children. The codicil then provided that the real and personal estate should be realized upon by the trustee, either at public or private sale, whichever might, in the discretion of the trustee, be deemed best for the interest of the estate, at the death of his wife, and be divided among his issue.

A trustee was then appointed, who was empowered to receive and pay over the income of the trust estate to the widow, who was appointed an executrix, and at her death to dispose of it as directed. There was no devise or bequest to the trustee of the estate, a part of which consisted of railway shares which fluctuated greatly in value.

With the consent of the widow the trustee sold these shares, and they were transferred by a bank, the transfer agent of the railway company, to the purchaser. The trustee thereafter died.

In an action brought by a substituted trustee against the bank and the railway company to require a transfer to the trustee of the stock so sold or for the recovery of its value:

*Held,* that the express power of sale given to the trustee could not be exercised until the death of the widow.

That as there were no directions what should be done with the stock, nor any provision forbidding its sale, the trustee had a right, acting in good faith, to sell the same in order to reinvest the proceeds in the securities authorized by law in such cases.

*Quære,* whether it was his absolute duty to sell fluctuating securities received by him as trustee.

That as the trustee was authorized to sell, the bank, though chargeable with notice that he held the stock as trustee, was justified in permitting it to be transferred upon the books of the railroad, and was not bound to see that the proceeds were thereafter properly invested.

That the provision directing the trustee to realize upon the real and personal estate at the death of the wife was not a restriction upon the sale of the stock, but was a provision inserted in aid of a distribution of the estate.

Appeal by the defendant, the National Bank of Commerce, in New York, from a judgment of the Supreme Court, entered, after a trial at the New York Special Term, in the office of the clerk of the city and county of New York on the 27th day of June, 1891, in favor of the plaintiff, directing that the said bank purchase and turn over to the plaintiff, or a receiver to be appointed herein, two hundred and eighty-two (282) shares of stock of the Chicago, Burlington and Quincy Railroad Company, or pay to said plaintiff or to a receiver thereby appointed, money sufficient to purchase said stock in the open market; that the net dividends or income from said stock or from said money be paid to the defendant bank during the lifetime of Harriette C. Hunt, and that on her death the said stock or principal shall belong to and be paid over to the plaintiff herein. That the Union Trust Company of New York be and it thereby was appointed receiver herein for such purpose.

That the plaintiff recover from the defendant bank the sum of $1,496$\frac{3}{100}$ costs and disbursements of this action as taxed, and that the plaintiff have execution therefor.

Also an appeal by the plaintiff, the Toronto General Trusts Company, from so much of said judgment as dismissed the complaint as to the defendant, the Chicago, Burlington and Quincy Railroad Company, and from that part of said judgment which directed that the net dividends or income from the stock or money therein mentioned, be paid to the defendant bank during the lifetime of Harriette C. Hunt,

and from said judgment, or so much, or that part, of said judgment which failed or refused to direct the delivery of said shares of stock, or payment of a sum of money sufficient to purchase the same to the plaintiff herein; or which failed or refused to award to the plaintiff or prevented recovery by the plaintiff of the dividends on said stock since the illegal transfer thereof, and interest thereon, less the amount actually paid Harriette C. Hunt by trustee Muirheid, mentioned in the complaint, and from said judgment, and each and every part thereof, which failed, refused or neglected to award to said plaintiff the relief prayed for in the complaint herein, and each and every part thereof, or requested in the requests submitted on behalf of plaintiff.

*Parrish & Pendleton,* for the plaintiff, appellant and respondent.

*Benjamin D. Silliman, Jasper W. Gilbert* and *Frederick A. Ward,* for defendant, the National Bank of Commerce, in New York, appellant.

*Root & Clark,* for the defendant railroad company, respondent.

Andrews, J.:

George H. Dunscomb, of Coburg, in Canada, died in Florida on March 25, 1871. He left a will, executed on December 14, 1870, whereby he specifically bequeathed to his wife certain stock and bonds, and gave certain pecuniary legacies to his relatives. His wife was named as executrix, and his brother John as executor. On the same day he executed a codicil, which, except as to the appointment of said executrix and executor, superseded the will, and was as follows:

" In the event of my having issue by my wife, Harriette Catherine Dunscomb, I give, devise and bequeath to my said wife for the term of her natural life the income from all the real and personal estate that I may die possessed of, and on her death to the child or children of our marriage now living, or who may be living at the time of my death, or born after my death, to be divided equally among them, share and share alike.

" The real and personal estate to be realized by my trustee, either at public or private sale, whichever may, in the discretion of the said trustee, be deemed best for the interest of my estate, at the death of my wife, and divided among the issue of my marriage as above directed.

"And I do appoint Charles H. Muirhead, of the city of Philadelphia, in the State of Pennsylvania, in the United States of America, as trustee under this my will, to collect and receive and pay over the income of the trust estate therein comprised to my wife, if she survives me, during her life, and at her death to dispose of the said real and personal estate as above directed.

"And I bequeath to the said Charles H. Muirhead for his services as trustee the usual commission."

Mr. Dunscomb left a widow, who, at the date of the will, was twenty-six years of age, and a posthumous son, both of whom are still living. The widow qualified as sole executrix, and on January 23, 1872, as such executrix, transferred to Muirhead 261 shares of the stock in controversy, describing him in such transfer as "Trustee for Harriette C. Dunscomb under the will of George H. Dunscomb," and on January 31, 1875, a certificate for a stock dividend of twenty-one shares was issued by direction of the defendant railroad, by the defendant bank to Muirhead, as "Trustee for Harriette C. Dunscomb, under the will." At the time when the transfer was made by the executrix to the trustee, in January, 1872, she lodged with the bank, with the certificate of her qualification, a copy of said will. On July 3, 1877, Muirhead, as trustee, sold all of such stock and transferred the same upon the books of the defendant railroad, kept by the defendant bank, to Ward, Campbell & Company. This sale and transfer were made with the full knowledge and approval of the widow, who, as above stated, was executrix, and under said codicil was entitled to the income received therefrom during her life. Such stock had fluctuated, since the death of the testator and the transfer to the trustee, about forty cents on the dollar in its market-price, and had declined below its par. The money derived from this sale was loaned by Muirhead upon mortgages on real estate, in the city of Philadelphia, but said mortgages turned out to be worthless, although the interest upon the same was paid to Mrs. Dunscomb until December, 1882. Muirhead died at Philadelphia, May 7, 1883, and was, at the time of his death, insolvent. Upon July 6, 1883, this action was commenced by the plaintiff, an institution alleged to be incorporated under the laws of the Province of Ontario, and which appears to have been appointed a collector of Dunscomb's estate by the High Court of

Justice in Canada.   Upon the trial the Special Term decided that Muirhead had no right to sell the stock, and that the defendant bank had notice of such want of authority, and judgment was thereupon entered in favor of the plaintiff against the bank, as prayed for in the complaint, but the complaint was dismissed as against the defendant railroad, and from such judgment appeals were taken by the plaintiff and the bank.

It was held by the Special Term that the trustee Muirhead had no right to sell the stock in question, because such codicil not only did not expressly authorize the trustee to sell the same, but also because the authority given to him to sell the stock, at the death of the widow, inferentially excluded the power to sell it before that time. We think that the grounds upon which the decision was placed are untenable, and that the judgment in favor of the plaintiff must, therefore, be reversed, and that the judgment in favor of the defendant railroad must, for the same reason, be affirmed.

As the testator left a posthumous child, the will was practically superseded by the codicil, which is inartificially drawn, and does not, in terms, give the stock in question, or any other property, to the trustee.   The first sentence of such codicil gives the income of all the testator's real and personal estate to his wife, during her life, and then, according to its grammatical construction, gives the income to his child or children; although the draughtsman of the will, and the testator, may have supposed that the division of the whole estate was provided for in the last clause of the same sentence.

The next sentence provides, in effect, for a sale of both the real and personal estate at the death of his wife.   The third sentence appoints Muirhead trustee, and empowers him to collect and receive and pay over the income to. the wife, during her life, and at her death, " to dispose of said real and personal estate as above directed."

This is substantially all there is of the codicil, and it is apparent, therefore, that it does not contain, in terms, any devise or bequest whatever to the trustee.   It is not necessary, however, to consider whether, in view of the duties devolved upon the trustee, it is to be implied that the legal title to the personal estate was vested in him by the codicil, because, as above stated, the executrix herself formally transferred the stock in question to him, and the legal title to such stock was certainly vested in him, in one way, or the other.

It is claimed by counsel for the defendant Bank that the codicil, when properly punctuated, can and should be construed as conferring on the trustee a power of sale, which could be lawfully exercised at any time after the death of the testator and the probate of the will. We are unable, however, to adopt this view, and are of the opinion that the express power of sale given by the codicil could not have been exercised until after the death of the wife. Nor can we adopt the view taken by the Special Term, that the sale by the trustee was unlawful, because it was not authorized in express terms by the codicil. The stock in question had fluctuated greatly in value during the time it was held by the trustee, and continued to fluctuate afterwards. It had declined about forty cents on the dollar, while in the hands of the trustee, at the time when the sale was made. The evidence shows such fluctuations prior to the time of the sale to have been as follows: In January, 1873, price was $138\frac{1}{2}$; in November, 1873, the price was 78; in 1874, the lowest price was 97 and the highest 109. In 1875, the highest price was 119 and the lowest $103\frac{1}{4}$. In 1876, the highest price was $121\frac{1}{2}$ and the lowest $103\frac{1}{2}$. In 1877, the highest price was $118\frac{7}{8}$ and the lowest 96. In the month of July, 1877, it ranged from 97, the lowest price, to 100, the highest. On the 3d of July, 1877, the price was $98\frac{5}{8}$ and 99. After the sale, and up to the time of the trial, it fluctuated from $183\frac{1}{2}$ to 78, and on the day of the trial it was selling at 79.

If the trustee had received from the executrix money, which, under the codicil, it would have been his duty to invest, and had purchased the stock in question, he certainly would have been personally liable had there ultimately been a loss upon the transaction (*Ackerman* v. *Emott*, 4 Barb., 626); and unless the codicil is to be construed as, in effect, forbidding a sale before the death of the wife, a court of equity would have directed a sale at the instance of the trustee or the *cestui que trust.* For aught that appears in the evidence, the trustee acted in good faith in making the sale. It appears that, before the sale was made, he submitted to the executrix and her second husband the question whether the stock should be sold, and that on June 13, 1877, the husband wrote to the trustee a letter which contained the following: "In reply to yours dated the twenty-fifth ult., and received yesterday, both my wife and self

think it would be most advisable to sell the railway stock you mention and to invest it as you may think advisable, *and where there will not be the slightest doubt as to its security,* and if you will see to this as soon as possible we shall be very much obliged to you. We shall be anxious to hear that you have sold out as it would be better to receive less interest and have it quite safe." No one but the executrix was interested in the matter, except her son, who was then an infant of tender years. There was apparently some ground for apprehending that the stock might further depreciate in value, if it did not become entirely worthless, and it doubtless appeared to the trustee, the executrix and her second husband, to be a wise and prudent thing to do, to sell the stock and invest the proceeds in some other manner; and it doubtless would have so appeared to any person who was accustomed to exercise reasonable care and prudence in managing his own pecuniary affairs, and especially so to a trustee, who honestly desired to protect the interests of his *cestui que trust,* and to avoid personal liability on his own part.

It is urged, on behalf of the plaintiff, that in determining the question whether the trustee had the right to sell such stock the intention of the testator should be sought, and that the codicil should be construed in such manner as to carry out that intention. This contention is undoubtedly well founded, but the difficulty is that, as we read the codicil, the testator did not therein declare what his intention was as to the question whether the stock should, or should not, be sold before the death of his wife; and if this be so, then the fair and necessary inference is that the testator intended that the trustee should be governed by whatever rules the law prescribes in such a case.

It is also said that trustees have those powers only which are expressly conferred upon them by the wills, deed, or other instrument, which creates the trust; and that to imply a power of sale, because securities are of an uncertain and fluctuating value, is to vary the terms of the trust. It frequently occurs, however, that courts, in the administration of justice, are obliged not only to enlarge or vary the terms of a trust by implication, but even to imply an intention to create a trust, when a trust has not been directly or expressly declared in terms.

It is also urged that to imply a power of sale, not expressly given

by the instrument creating the trust, is to invest the trustee with a discretion, the exercise of which may, as in the case at bar, result disastrously for the *cestui que trust*. The answer to this argument is that, in the absence of a statute governing the case, courts should adopt a rule which, it is reasonably certain, will produce the best results in the greatest number of cases. The rule in England and in this State, which forbids a trustee to invest trust funds in the securities of railroads and other corporations is a most salutary one ; and we think the rule is, or ought to be, that a trustee who receives trust property, invested in such securities, should, if he is not *required* to sell the same, at any rate, have the right to make such sale, and invest the proceeds in the same manner that he would be required to do if the trust property received by him consisted of money. In some cases this course may result in loss of income, but if the trustee is honest, and reasonably careful, the principal at least will be safe. On the other hand, the doctrine contended for by the plaintiff's counsel would, in many cases, lead to the result that when, as frequently happens, the instrument creating the trust contains no power of sale, the trustee has no duty to watch the securities in his charge, to see whether they are appreciating or depreciating in value ; and even if he sees that they are depreciating in value, and may eventually become worthless, he is wholly powerless, and must stand idly by until the trust fund has entirely disappeared. A doctrine, which leads to this result, cannot be a sound one, and while we concede that the general rule is, as claimed by plaintiff's counsel, viz., " that trustees may not sell or vary specific securities given in trust, nor securities left by a testator, in which he has himself invested the funds," we think that this rule does not prevent trustees from converting wasting securities into those of a permanent character, and converting investments, that are not authorized by law, into such as are allowed by law. We are also of the opinion that the general rule applicable to this class of cases is correctly stated in section 465 of Perry on Trusts, and is as follows: " There is said to be a distinction between an original investment improperly made by trustees and an investment made by the testator himself and simply continued by a trustee ; but it is a distinction that cannot be safely acted upon. If a testator gives any directions in his will to continue his investments already made, trustees must, of course, follow such directions ; and if they follow

them in good faith, they will not be liable for any losses unless they are negligent in failing to change an investment when it ought to be changed to save it; for it cannot be supposed that the direction of a testator to continue a certain investment relieves the trustee from the ordinary duty of watching such investment, and of calling it in when there is imminent danger of its loss by change of circumstances. If no directions are given in the will as to the conversion and investment of the trust property, trustees, to be safe, should take care to invest the property in the securities pointed out by the law.   It is true that a testator, during his life, may deal with his property according to his pleasure, and investments made by him are some evidence that he had confidence in that class of investments; but in the absence of directions in the will, it is more reasonable to suppose that a testator intended that his trustees should act according to law. Consequently, in States where the investments which trustees may make are pointed out by law, the fact that the testator has invested his property in certain stocks, or loaned it on personal security, will not authorize trustees to continue such investments beyond a reasonable time for conversion and investment in regular securities.   \* \* \* Taking all the cases together, it would appear to be a settled principle that trustees are not justified, in the absence of express or implied directions in the will, in continuing an investment permanently made by the testator, which they would not be justified themselves in making.   The principle probably has this qualification that if a trustee continue such investment in good faith, and a loss happens, he would be held to replace the original sum only, without interest."

We are referred to quite a number of cases by the counsel for the respective parties.   Some of these tend to support the views above expressed, and some do not.   Some of them arose in the case of executors, and it is claimed by plaintiff's counsel that they are, therefore, inapplicable.   Most of the cases cited arose in the English courts, and are not controlling here, except so far as the decisions appear to be based upon sound principles of natural justice.   We do not see that it would subserve any useful purpose if we should make an elaborate examination of these cases, and point out wherein they support, or antagonize, the views entertained by us.   In the absence of any controlling decision by the courts of this State to the con-

trary, we feel at liberty to adopt the rule which is founded, as we think, in reason and justice, and which is, that where a trustee receives such personal securities as the stock in question, and the instrument creating the trust neither empowers, nor forbids, a sale, he has the right to sell the same, for the purpose of reinvesting the proceeds in such securities as he is authorized by law to invest in. Whether it is the absolute duty of the trustee in such case to sell the securities, and whether in case he does not sell them, and loss ensues, he can be held liable for such loss, it is not now necessary to decide. If Muirhead had the right to sell the stock in question, the defendant bank, though chargeable with notice that he held the stock as trustee, was justified in permitting the transfer of the stock upon the books of the defendant railroad, which were in its custody, and was not bound to see to it that the proceeds were thereafter properly reinvested, and cannot be held liable for the subsequent loss of the trust fund.

The plaintiff's counsel, however, contends that the codicil contains a provision, which, by necessary implication, forbade the sale before the death of the wife, and this view was also taken by the Special Term. The provision in question is the one which declares that the real and personal estate is to be realized by the trustee, at public or private sale, at the death of the wife.

We are unable to accept this construction of the codicil. Said provision must be construed with reference to the rule, above laid down, as to the right of the trustee to sell, when he is not, in terms, forbidden to do so. There was no specific bequest of the stock to the trustee, for, as above stated, the codicil does not, in terms, give anything to the trustee. Such stock, if needed to pay the testator's debts, might have been sold by the executrix, and never have come into the trustee's hands. The testator saw fit to provide for the distribution of his estate, at the death of his wife, among his children, in cash, and the provision for the sale appears to have been inserted solely for the purpose of enabling the trustee to make such distribution. It does not, in any way, refer to said stock, or any particular property, but, as we construe the codicil, it is merely a general direction that whatever real and personal property should be held by the trustee, at the time of his wife's death, should then be sold, and the proceeds divided among his children. We cannot think

that this provision should be regarded as forbidding the trustee to sell the stock before the death of his wife.

Upon the whole case, we are of the opinion that the judgment in favor of the plaintiff against the defendant bank should be reversed and new trial ordered, with costs to appellant to abide the event, and that the judgment in favor of the defendant railroad should be affirmed, with costs.

Van Brunt, P. J., and Barrett, J., concurred.

Judgment of the plaintiff against the defendant bank reversed, and new trial ordered, with costs to the appellant to abide event, and judgment in favor of the defendant railroad affirmed, with costs.