GUARANTY TRUST COMPANY OF NEW YORK, as Trustee, Appellant, *v.* DORIS LEWIS, Respondent, Impleaded with Others.

Argued November 30, 1938; decided January 10, 1939.

· *Otis T. Bradley* and *Andrew Y. Rogers* for appellant. The trustee had power to sell the bonds even assuming that the express power of sale was not incorporated in .the secondary trust. (*Toronto General Trusts Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; 138 N. Y. 657; *Guaranty Trust Co.* v. *U. S. Steel Corp.*, 107 Misc. Rep. 720; 187 App. Div. 889; 226 N. Y. 693; *Matter of Quinby*, 134 Misc. Rep. 296; *Matter of Turner*, 156 Misc. Rep. 68; 246 App. Div. 741; *Sutherland* v. *Cooke*, 1 Collyer, 498.)

The trustee was authorized to sell the bonds under the express power of sale which was incorporated in the secondary trust freed from the limitation of the grantor's consent. (*Phillips* v. *Davies*, 92 N. Y. 199; *Sohier* v. *Williams*, 22 Fed. Cases, 772; *Loeb* v. *Hasslacher*, 209 App. Div. 58; *Easy Payment Property Co.* v. *Vonderheide*, 123 Ky. 352; *Bigelow* v. *Tilden*, 52 App. Div. 390; *Koch* v. *Robinson*, 26 Ky. Law Rep. 969; *Guaranty Trust Co.* v. *U. S. Steel Corp.*, 107 Misc. Rep. 720; 187 App. Div. 889; 226 N. Y. 693; *McCarter* v. *Crawford*, 245 N. Y. 43; *McDermott* v. *Lawyers' Mortgage Co.*, 232 N. Y. 336; *Matter of Fordham*, 235 N. Y. 384; *Matter of O'Dell*, 124 Misc. Rep. 76.)

*Daniel A. Shirk* and *Milton A. Goldiner* for respondent. Plaintiff had no implied power to sell. (*Kissam* v. *Dierkes*, 49 N. Y. 602; *Barber* v. *Cary*, 11 N. Y. 397; *Gulick* v. *Griswold*, 160 N. Y. 399; *Wells* v. *Brooklyn Elevated R. R. Union Co.*, 121 App. Div. 491; 193 N. Y. 641; *Pawles* v. *Jordan*, 62 Md. 499; *Peirsol* v. *Roop*, 56 N. J. Eq. 739; *O'Connor* v. *Waldo*, 83 Hun, 489; *Suarez* v. *de Montigny*, 1 App. Div. 494; 153 N. Y. 678.) The trustee had no absolute express power to sell the securities set aside for the secondary trust. (65 C. J. p. 499; 69 C. J. p. 831.)

FINCH, J. This is an action to settle the account of the plaintiff as trustee of an *inter vivos* trust. The question involved is the power of plaintiff trustee as a matter of law to sell five $1,000 Great Northern Railway bonds which the settlor had deposited with the trustee as part of the original trust corpus and which the trustee, pursuant to the trust agreement, had allocated to constitute the corpus of the subsequent trust for the defendant-respondent.

The facts are as follows: In 1924 plaintiff, Guaranty Trust Company, was named as trustee in a trust indenture whereby one Fannie D. Lewis created a trust for her own

life, consisting of certain securities owned by her. The settlor died within one month after the trust was established and, under the terms of the trust agreement, the trustee paid over all the securities in the trust to her son, Herbert D. Lewis, with the exception of five $1,000 Great Northern Railway seven per cent bonds, which it continued to hold in trust for the granddaughter of the settlor, the defendant, Doris Lewis. The trust indenture provided that upon the termination of the original trust, by reason of the death of the settlor, the trustee was " to set aside from the property and securities then in its possession and any accumulated income there may be, the sum of Five Thousand ($5,000) Dollars in money, or securities or property or both then in its possession, which in its judgment shall fairly and justly equal that sum; to hold said money, or property or securities or both, in trust nevertheless, upon the same terms and conditions as are herein set forth with reference to the trust hereinbefore created, to pay over the income therefrom to my granddaughter Doris Lewis * * *." Pursuant to this direction, the $5,000 worth of bonds were allocated to this secondary trust upon the death of the settlor. Shortly thereafter, the trustee sold these bonds and with the proceeds bought guaranteed mortgage certificates.

In this accounting proceeding the defendant, Doris Lewis, objected to the account and interposed counterclaims. Thereafter defendant moved for an order striking out plaintiff's reply to the first counterclaim and for judgment against the plaintiff upon this counterclaim, and also for judgment on the pleadings under rule 112 of the Rules of Civil Practice, on this counterclaim. On this motion judgment was directed in favor of defendant on the counterclaim, which was for the value of the $5,000 Great Northern Railway bonds, and the interest the defendant would have received if the trustee had continued to hold the bonds. It was the theory of the

counterclaim that the trustee had no power to sell the bonds after the allocation was made. The trustee in opposition relied upon a provision of the trust deed which reads as follows:

"*Third.* The Trustee is authorized and empowered to retain, subject to the provisions hereof, any and all of the property and securities hereinbefore described in their present form * * *

"The Trustee is likewise hereby authorized and empowered, from time to time, to invest and reinvest such property and securities with full power of sale in connection therewith, in such securities as it may deem suitable for the trust, and shall not be restricted to securities of the character authorized by the laws of the State of New York for trust investments, such power of sale, however, to be exercised only subject to the consent of the said party of the first part."

The Appellate Division unanimously affirmed the judgment in favor of defendant on the counterclaim, and the appeal is here by permission of this court.

In the absence of a provision in the trust indenture authorizing the trustee to retain the securities which were non-legals, the trustee would have been under a duty to dispose of them within a reasonable time, unless special circumstances warranted retention. Ordinarily a trustee may not retain securities in which he would not have been permitted to invest. (*Toronto General Trusts Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; affd., on opinion below, 138 N. Y. 657; *Matter of Wotton*, 59 App. Div. 584; affd., 167 N. Y. 629; *Matter of Douglas*, 60 App. Div. 64, 67; see *Matter of Weston*, 91 N. Y. 502; *King* v. *Talbot*, 40 N. Y. 76; *Matter of Taylor*, 277 Penn. St. 518; *Matter of Leitsch*, 185 Wis. 257.)

Where securities are given to a trustee with no directions to hold (*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137), but with power to retain, and there are non-legal securities among them and the instrument creating the trust

neither empowers nor forbids a sale, the trustee has an implied power of sale of the non-legals for the purpose of reinvesting the proceeds in such securities as are authorized by law. (*Toronto General Trusts Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; affd., on opinion below, 138 N. Y. 657; *Guaranty Trust Co.* v. *U. S. Steel Corp.*, 107 Misc. Rep. 720; affd., 187 App. Div. 889; affd., 226 N. Y. 693.) In the *Toronto* case the court pointed out: " The rule in England and in this State, which forbids a trustee to invest trust funds in the securities of railroads and other corporations is a most salutary one; and we think the rule is, or ought to be, that a trustee who receives trust property, invested in such securities, should, if he is not required to sell the same, at any rate, have the right to make such sale, and invest the proceeds in the same manner that he would be required to do if the trust property received by him consisted of money " (p. 8).

Language showing a different intention may make inapplicable the above principles.

We pass then to an examination of the trust instrument. Since there was a power to retain, there was no obligation upon the trustee to sell. In fact, in the primary trust, during the life of the settlor while full power of sale and power to invest and reinvest was given, such sale could only be made with the consent of the settlor.

What was the situation after the death of the settlor? What did the trust agreement provide? The trustee was directed to set up a trust out of the money or securities or property in its possession upon the death of the settlor, and to hold it " upon the same terms and conditions as are herein set forth with reference to the trust hereinbefore created." The " trust hereinbefore created " authorized the retention of the Great Northern bonds, and, as noted, it also authorized their sale, " such power of sale, however, to be exercised only subject to the consent of the said party of the first part." The party of the first part, the settlor, was dead. Does this mean that the

power of sale could not be exercised, since her consent could not be obtained? In other words, did this settlor intend to prohibit a power of sale after her death in the conduct of this secondary trust or did she grant an express power of sale freed from any consent? As already noted, the settlor had granted in the primary trust the broadest possible power of sale subject only to her consent. After her death she expressly provided that the secondary trust for her granddaughter, then nine years of age, should be held " upon the same terms and conditions * * *." This was not a case where the consent was to be exercised by a person other than the settlor but by the settlor herself, and so by no possibility could outlast her life. Did the settlor intend to exclude entirely from the secondary trust all the provisions of the primary trust concerning the power of sale, or did she intend to incorporate an express power of sale freed from the limitation of the consent of the settlor? If no part of the clause dealing with the full power of sale was incorporated into the secondary trust, then there was an implied power to sell non-legals, unless such power was affirmatively forbidden. (*Toronto General Trusts Co.* v. *C., B. & Q. R. R. Co., supra.*)

We must, therefore, ascertain whether the consent having become impossible the power of sale was wholly extinguished, which is the contention of the respondent, or whether there was incorporated into this secondary trust the power of sale freed from the limitation of the consent of the grantor.

An examination of the language of the entire instrument indicates the latter intention. At the time of the execution of the trust instrument the grandchild was, as already noted, not quite nine years old. The settlor did not then know how soon it would be necessary to set up the secondary trust or how long it would continue. It might then continue, and as a matter of fact did continue, for about twelve years, since the settlor died within one

month after the execution of the trust instrument. With the exception of an annuity agreement, the entire primary trust consisted of corporate stocks and bonds. Presumably recognizing the fluctuating quality of such securities the grantor had expressly provided a full power of sale and resale subject to her own consent. Since the grantor had provided that the corpus of the secondary trust should be made up of the securities chosen by the trustee alone after her death, would not the natural and normal provision be to provide for a similar power of sale without any consent since the settlor was dead and the beneficiary, a minor not quite nine years old? (Cf. *Koch* v. *Robinson*, 26 Ky. Law Rep. 969.)

Both primary and secondary trusts authorized the trustee to retain all of the property and securities " in their present form." This power to retain read in the light of this whole instrument would seem to make implicit a power to sell. (Cf. *Guaranty Trust Co.* v. *U. S. Steel Co.*, 107 Misc. Rep. 720; affd., 187 App. Div. 889; affd., 226 N. Y. 693.) If, as respondent contends, this trustee had absolutely no power of sale, is it not pertinent to inquire the need for a provision authorizing the trustee to retain?

A trust instrument of this character, presumably to endure for so long a time, imports care in its draftsmanship. We are, therefore, required to examine carefully the words and phrases used. In so doing, we find that the words used in paragraph third were not those of condition but of limitation. The grantor provided that the full power of sale was " to be exercised only subject to the consent of the said party of the first part." Not " conditioned upon " but " subject to." What the draftsman said, in effect, was, that so long as the settlor lived the power of sale was subject to a limitation or charge which being removed by the settlor's death, left the power, which was to continue, free from the charge. Limitations or charges differing from conditions do not defeat the power by their expiration. (Cf. *Matter of Fordham*, 235 N. Y.

384.) When the limitation expires, the power is free. Respondent relies upon cases wherein the court found an intent to create a condition to the exercise of the power.

A proper construction of this trust instrument shows that when the settlor provided that the corpus of the secondary trust was to be held upon the same terms and conditions as the primary trust, she intended to exclude from the secondary trust only so much of the terms as were rendered nugatory by her death. The trustee, therefore, was expressly authorized to sell the Great Northern bonds. It is not necessary to answer at length the contention that there was here a gift of particular securities which were to be held in kind in the secondary trust until the grandchild came of age and that therefore there was no power of sale. Since the trust instrument provided that the trustee was to set aside at the death of the settlor the sum of $5,000 from property, securities and money then in its possession, and since it was required to pay over income therefrom to the grandchild, it would not be a reasonable construction that the corpus of the trust so selected must be kept intact until the grandchild became of age and then handed over in kind.

It is true that a different rule has been applied where the trust corpus consisted of real estate. (*Kissam* v. *Dierkes*, 49 N. Y. 602; *Barber* v. *Cary*, 11 N. Y. 397; see *Gulick* v. *Griswold*, 160 N. Y. 399.) But the difference between the nature of real property and securities or personal property, requires the application, as in many other instances, of different rules.

The judgments should be reversed, with costs in all courts, and judgment granted for the plaintiff dismissing the first counterclaim of the defendant-respondent, with costs.

LEHMAN, O'BRIEN and LOUGHRAN, JJ., concur; CRANE, Ch. J., concurs in result: RIPPEY, J., dissents; HUBBS, J., taking no part.

Judgment accordingly.