In the Matter of LUCY SPITZMULLER, Respondent. BANKERS TRUST COMPANY, Trustee of Trusts Created by Indentures Made by MORTON OTIS, Appellant.

First Department, December 11, 1951.

*Orison S. Marden* of counsel (*Haliburton Fales 2d* and *John M. Johnston* with him on the brief; *White & Case,* attorneys), for appellant.

*Leslie H. Arps* of counsel (*Joseph H. Flom* and *John S. Estey* with him on the brief; *Root, Ballantine, Harlan, Bushby & Palmer,* attorneys), for petitioner-respondent.

*Peter Keber* of counsel (*Dorsey, Burke & Keber,* attorneys), for New York State Bankers Association, *amicus curiæ.*

COHN, J.  In 1926 Morton Otis, an American citizen temporarily residing in Europe, created two *inter vivos* trusts. Appellant, Bankers Trust Company, was appointed trustee. The corpus of the trusts consisted of shares of the capital stock of Gillette Safety Razor Company.  One of the trusts contained 1,000 shares and the other 600 shares.  The trusts were created to make some provision for Helena Otis, the settlor's former wife from whom he had been divorced by a decree of the French courts in August, 1925.  Helena Otis was for her life made the income beneficiary of the two trusts.  If she predeceased the settlor, the trusts were to cease and principal and all accrued interest was to be paid back to the settlor. Upon the death of Helena Otis, occurring after the death of the settlor, the trustee was directed to pay over the corpus of each of the trusts to such persons as the settlor " may by his last will and testament designate and appoint ", and in default of such appointment to his next of kin under the intestacy laws of

the State of Connecticut. The agreements provided that they were to be construed and enforced according to the laws of the State of New York.

Morton Otis died in Switzerland on April 7, 1944. Some three months later and on July 29, 1944, Helena died in the same country. The trusts thus terminated.

Within ten days after Helena Otis had died and on August 8, 1944, Bankers Trust Company sold on the New York Stock Exchange the 1,600 shares of Gillette Safety Razor Stock, which had been intact in the two trusts since their inception. The sum of $19,035.56, the market value of the stocks at that time, was realized upon the sale.

Upon the death of the settlor, the trustee was unable to find a will. Proceedings were later instituted in the Surrogate's Court of New York County, which resulted in the issuance of letters of administration to the settlor's brother, Sidney Otis, on March 14, 1945. Admittedly he was the sole next of kin of the settlor under Connecticut law.

On June 7, 1945, which was eleven months after the termination of the trusts, and fourteen months after the death of Morton Otis, the trustee proceeded to pay over the corpus of the two trusts to Sidney Otis. A year later, and on June 24, 1946, Sidney died leaving no substantial assets.

Morton Otis had resided in Vevey, Switzerland, with his former wife, Helena, for many years prior to his death. After his decease, counsel for the trustee inquired of competent authorities in Vevey as to the existence of any will. They were informed by the Swiss Justice of the Peace that no will had been found, and that Helena Otis prior to her death had stated that Morton died intestate. The first intimation that Bankers Trust had of the existence of a will came in November, 1945, when an attorney in New York notified the trustee that he had received a cable from one Lucy Spitzmuller, the petitioner, in which she stated that Morton Otis had left a will in her favor. The will, executed in Italy in March, 1937, declared that the settlor was a native born citizen of the United States "now domiciled in Florence, Italy." It bequeathed "all my real and personal property unto Lucy Spitzmuller of Vienna Austria", and made no mention of the powers contained in the *inter vivos* trusts.

Lucy Spitzmuller was an Austrian citizen. She was an intimate friend of the settlor and of Helena Otis. Shortly after its execution, the will had been mailed to Baroness Spitzmuller in Italy, where she then resided.

Petitioner notified Bankers Trust of her claim to the principal of the trusts. Following a rejection of the claim, the settlor's will was on application by petitioner admitted to probate in New York County on May 15, 1947. She then instituted this proceeding to compel the trustee to pay over to her all the property of the two trusts, as the alleged appointee of Morton Otis under his will.

The trial had thereon consisted almost entirely of a stipulation of facts, the pleadings and a deposition of petitioner upon written interrogatories. The court decided that the will of Morton Otis had effectively appointed the remainder of each trust to petitioner; that the trustee had erroneously distributed this remainder, and directed that it pay over again from its own funds to petitioner. The court also ruled that the trustee had no power upon the termination of the trusts, in 1944, to reduce the corpus to cash, but that it should have retained the securities comprising the corpus for distribution in kind to the person or persons to be found entitled to them. Such ruling resulted in a further surcharge of more than $100,000, since the securities sold in August, 1944, had on the day of the decision increased in value from $19,035.56 to $94,800 and dividends declared thereon in the interim had amounted to $29,760.

Upon this appeal the trustee urges that: (1) it should not be required to pay again because it proceeded with due care in making distribution to a person apparently entitled thereto under the documents of which it had notice, (2) petitioner is not in fact the appointee of Morton Otis, and (3) in no event should it have been surcharged because of conversion of the corpus of the trusts into cash.

We proceed now to a consideration of these contentions.

Was delivery of the proceeds of the trusts to Sidney Otis, the sole next of kin, in good faith, with due care and without notice of the existence of the 1937 will a complete defense to the trustee? There are, of course, cases which hold that a trustee who distributes trust property under a mistake of law is nevertheless liable, irrespective of good faith and due care (*Matter of Murphy*, 213 App. Div. 319; *Prince de Bearn* v. *Winans*, 111 Md. 434). Where the mistake is one of fact, the courts impose liability on the trustee only if the fiduciary was either in a position to discover the facts or could have taken preventative steps to foreclose the known claimant but failed to do so (*Matter of Carpenter*, 154 Misc. 143, 145).

A trustee may be absolutely liable in paying the wrong person where he fails to find or cite the person nominated in the instrument before him. However, no more than due care is required where the trustee pays the person entitled thereto according to the instruments of which he has notice notwithstanding the later discovery of a document creating a better right in another. Thus it has been held that a trustee is responsible to an assignee of a beneficiary only when the trustee is put on notice of the assignment (*Seger* v. *Farmers' Loan & Trust Co.*, 176 N. Y. 589, revg. 73 App. Div. 293; Restatement, Trusts, § 226, Comment, p. 642).

The facts here show that the trustee made payment to Sidney Otis without notice of the existence of the 1937 will under which petitioner now claims and without failing to exercise reasonable care. The trustee had learned by inquiry from the Justice of the Peace in Vevey, Switzerland, where the decedent had died, and where he had lived with his former wife Helena for five years prior to his death, that no will had been found, and that Helena had stated that the settlor died intestate.

The only person, other than the settlor, who appears to have known of the existence of the will was petitioner herself, who resided in a different country from the one in which decedent had lived and died. The settlor never informed the trustee that he had executed a will in 1937. He was, of course, presumed to know the terms of the trusts. If it were his intention to appoint the remainders of the principal of the trusts by will, it would seem that he should have notified the trustee of such act.

It is difficult to determine what inquiries or investigations the trustee might have made to ascertain whether or not the settlor left a will. The New York County Surrogate's Court made a determination of intestacy of Morton Otis, for it had issued letters of administration to Sidney Otis based upon that finding. This was three months before the trustee's distribution to Sidney Otis. It would be unreasonable to hold a trustee as a guarantor against the possibility of a will. Indeed, here, there is still a hazard that a later will may exist which appoints the trust remainders to a person other than petitioner. The orderly administration of estates and trusts demands that those who have claims by reason of existing wills come forth and produce the documents or assert their claims. Failure on the part of the testator to notify the trustee that he had executed the will of 1937 should not be the basis for permitting his legatee to impose upon the trustee the severe penalty decreed by the Special Term.

Although in certain circumstances an application to the court for authority to act might be an element of due care in situations involving unknown wills, it seems unjust to make imperative that action in cases such as this, suggesting the mere possibility of unknown beneficiaries under unknown instruments.

Appellant trustee in paying out the trusts' assets to Sidney Otis some fourteen months after the death of Morton and eleven months after Helena's death did, we think, what any reasonably prudent trustee would have done in like circumstances. Where, as here, nothing has put the trustee on notice of the existence of a will which might require it to pay under an ambulatory power, it is held only to the standard of due care and good faith, to which a trustee is usually held. This principle has been generally recognized: (*Seger* v. *Farmers' Loan & Trust Co.*, 176 N. Y. 589, *supra* [distribution to beneficiary named without notice of prior assignment of interest]; *Matter of Carpenter*, 154 Misc. 143, *supra* [distribution by administrator without knowledge of other next of kin]; *Maryland Cas. Co.* v. *Thompson*, 129 N. J. Eq. 12; *Bliss* v. *Spencer*, 125 Va. 36, 57, 58 [distribution by administrator without knowledge of existence of will]; *Cothay* v. *Sydenham*, 2 Bro. C.C. 391 [Eng.], [distribution by trustee without notice of execution of ambulatory power]; *Leslie* v. *Baillie*, 2 Younge & Collyer C.C. 91 [Eng.], [distribution by executor without notice of applicable foreign law requiring distribution to another]).

As stated by the highest court of Virginia in *Bliss* v. *Spencer* (*supra*, p. 57-58): " the duty of an administrator to distributees under the statute [in our case, the trust instruments] is to distribute the estate with reasonable diligence; and with respect to distributing the estate, notwithstanding the possibility of the existence of an undiscovered will, that possibility always exists; and if the administrator acts with reasonable diligence to ascertain whether a will exists, and when acting with reasonable prudence in that regard, does not think and has no reasonable grounds to think that a will exists, he may safely distribute the estate, so far as persons taking under a then unknown and unrecorded will are concerned ".

Having made payment in good faith and with due care to the person prima facie entitled to receive the corpus of the trusts, the trustee should not be required also to pay to a stranger who months thereafter unexpectedly produces a will. Petitioner could have no rights against the trustee with respect to the sums distributed in good faith to Sidney Otis, and must look to Sidney's estate if she has any rights at all.

We now come to the second problem. Is petitioner the appointee of Morton Otis? In the will of 1937, executed in Italy, which was produced by petitioner, Morton Otis did not purport to exercise the powers of appointment in the *inter vivos* trusts which he had theretofore created. His brief will merely bequeaths '' all my real and personal property unto Lucy Spitzmuller of Vienna, Austria.'' Neither the *inter vivos* trusts nor the powers of appointment, which the settlor had reserved, were mentioned in the instrument.

Under the common-law rule, a will so drawn would not be deemed an exercise of a power of appointment (*Matter of New York Life Ins. & Trust Co.*, 139 N. Y. S. 695, 702, affd. 157 App. Div. 916, affd. 209 N. Y. 585). By section 18 of the Personal Property Law, this common-law rule as to personalty was changed in the State of New York (*Matter of Smith*, 279 App. Div. 140 [1st Dept.]). In *Lockwood* v. *Mildeberger* (159 N. Y. 181) it was held that by force of the statute when a will purports to dispose of all the testator's property, it operates as an execution of a power of appointment, unless the intent that it shall not so operate appears expressly or by necessary implication; and this rule applies to personal estate, as well as to a power as to real estate.

Whether or not Otis by his will intended to exercise the powers contained in the *inter vivos* trusts is fundamentally one of intention. The intention of the testator is the controlling factor. The presumption created by section 18 of the Personal Property Law is only a rebuttable one (*Chase Nat. Bank* v. *Chicago Title & Trust Co.*, 246 App. Div. 201, 205, affd. 271 N. Y. 602).

The trust instruments, as already stated, provided that in default of an appointment by will, the property should pass to his next of kin as determined by the intestacy laws of the State of Connecticut. Although Morton Otis at the time of execution of the indentures was temporarily residing in Europe, he obviously regarded himself as a domiciliary of Connecticut. This view is further supported by correspondence between the trustee and settlor. Connecticut has the common-law rule that requires affirmative evidence of the exercise of a power of appointment (*Hollister* v. *Shaw*, 46 Conn. 248; 43 Col. L. Rev. 256 [1943]).

Petitioner relies solely upon the presumption created by section 18 of the New York State Personal Property Law. However, since there is no claim that Otis was ever a resident of this

State, the New York statute cannot govern the effect to be given to the provisions of his will.

The 1937 will was executed in Florence, Italy, and it recites that Morton Otis was then domiciled in that country. There is, of course, no presumption that the applicable law of Italy is similar to the statute which would govern the interpretation of the will had Otis died a resident of New York. Though there was no proof adduced as to the Italian law, it would seem that an affirmative exercise of the power is necessary in that jurisdiction (*Matter of New York Life Ins. & Trust Co.*, 139 N. Y. S. 695, *supra*).

Respondent contends that the provisions in each trust which state: " This agreement shall be governed, construed, interpreted and enforced according to the laws of the State of New York ", requires a determination that the will passes all the personal property of the testator to petitioner. However, the language just quoted refers only to the trust agreements. The law of the testator's domicile, in the circumstances here, controls the interpretation and scope of the will.

Moreover, if it had been the intention of the settlor to exercise the power of appointment reserved in each of the trust indentures, undoubtedly he would have informed the trustee of the existence of the will. He did not supply a copy to his former wife, who was the only beneficiary of the trusts, nor did he leave a copy with anyone, save that he delivered the will to a stranger to the trusts, who was not a relative either by blood or marriage and to whom he had never given any information as to the existence of the trusts. The inference is clear that the settlor never intended the will to exercise the power reserved by him in the two *inter vivos* trusts.

Was the trustee authorized to sell the Gillette Safety Razor stock on the termination of the trusts? Though a discussion of this problem might be deemed unnecessary in view of our disposition of the other two questions, we state our views because of the importance of the issue involved.

The corpus of each trust consisted entirely of the highly speculative common stock of Gillette Safety Razor Company. During the years preceding the sale, it had fluctuated widely ranging from a low of $2 per share in 1941 to a high 20⅞ in 1937. From 1940 to 1943, the range was between a high of 9¼ and a low of 2. In August, 1944, when the sale was made, the stock had risen to about $12 per share.

No language is to be found in the trust instruments which directed the trustee to distribute the corpus in kind, or which prohibited its sale for the purpose of distribution. A trustee in distributing assets has the power to sell personalty, unless there is a clear prohibition in the trust instruments. This rule is particularly applicable in a case where, as here, nonlegal securities are held (*Villard* v. *Villard*, 219 N. Y. 482, 500; *Guaranty Trust Co.* v. *Lewis*, 279 N. Y. 396, 400; *Matter of Denari*, 165 Misc. 450; 3 Scott on Trusts, § 347.4).

From a consideration of the provisions of the trust instruments and in the light of the facts, we are persuaded that the trustee acted wisely and prudently in selling during August, 1944, the highly volatile stocks which constituted the corpus of the trusts. Indeed, if the trustee had not sold this stock immediately after the termination of the trusts and, if the stocks in the meantime had decreased in value, there might have been a claim made to surcharge the trustee for failure to sell promptly. In our view, it was not a breach of the duty of the trustee here to sell the stocks on the termination of the trusts and it should not have been surcharged for so doing.

Accordingly, we decide (1) that this trustee having in good faith and with due care paid the person prima facie entitled to receive the corpus of these trusts, is not liable a second time to petitioner, and that she has no rights against the trustee with respect to the sums distributed in good faith to Sidney Otis; (2) that in the 1937 will Morton Otis did not in fact exercise the power of appointment reserved in the trusts, that petitioner is not the appointee of Morton Otis, and that she has no standing to claim any part of the trusts' funds; (3) that, in any event, the trustee should not have been surcharged for selling the stock on the termination of the trusts.

The order appealed from should be reversed, with costs, and the petition dismissed, with costs.

PECK, P. J., GLENNON, DORE and CALLAHAN, JJ., concur.

Order unanimously reversed, with costs, and the petition dismissed, with costs. Settle order on notice.