Fuld, J.
(dissenting). I agree with Judge Dye.
We deal here with a testatrix (Dagmar Bauer) who died in England, where she had long been domiciled, after there executing a will in which she exercised a general power of appointment, of which she was donor as well as donee, pursuant to a trust indenture executed in Few York almost 40 years earlier. The court’s decision to apply Few York law to test the validity of Mrs. Bauer’s exercise in England (in 1954) of the power of appointment which she had reserved to herself (in 1917) strikes me as an unfortunate example of adherence to mechanical and arbitrary formulae. The same considerations which prompted a departure from the inflexible and traditional choice-of-law rules in other cases (see, e.g., Auten v. Auten, 308 N. Y. 155; Babcock v. Jackson, 12 N Y 2d 473), it seems to me, should move the court to re-examine the wisdom and justice of continuing to apply similarly inflexible rules, without regard to significant underlying factors, in disposing of cases such as the present one.
The traditional rule which identifies the instrument exercising the power with the instrument creating it, for the purpose of testing the validity of the exercise of the power (see Matter of New York Life Ins. & Trust Co., 209 N. Y. 585; Matter of Deane, 4 N Y 2d 326), assumes that ownership of the appointive property remains at all times in the donor of the power and that the donee of the power serves merely as a conduit or agency through which the donor’s intention with respect to the appointive property is realized. (See, e.g., 3 Powell, Law of Real Property [1952], p. 287.) Such an assumption is, perhaps, justified where the power created is “ special ” and confines the donee’s exercise of the power within the limits proscribed by the instrument creating the power. However, the assumption is certainly not justified when the power created is ‘ ‘ general ” or “ beneficial ”, whether exercisable by deed or will or by will alone, and no restrictions of any other kind are imposed on its exercise by the donee. In the latter case — and in the one before us upon the death of Mrs. Bauer’s husband—it is *279 evident that the donee is vested with the equivalence of ownership as to the appointive property. (See, e.g., Cheshire, Private International Law [6th ed., 1961], p. 578.)[1] And this is particularly true where the donor and donee of the general power are the same person.[2] This being so, it runs counter to reason to assume that the donor in such a case becomes his own agent to preserve an attachment to the place where the original trust agreement was executed, even though he has abandoned that place as his residence and acquired a new domicile in another jurisdiction, to the laws of which he voluntarily subjected himself.
In exercising the general power of appointment in England 37 years after she had conferred such power upon herself, Mrs. Bauer was justified in treating the appointive property as her own, and it is reasonable to suppose that, in disposing of such property under a will executed in England by an English solicitor, designating an English institutional executor and trustee to administer the trust and conferring benefits, at least in part, upon an English charity, Mrs. Bauer (through her English solicitor) had exercised the power in the light of English, rather than New York, law. The inference is inescapable that she intended the disposition of the appointive property to be governed by the same law which would govern the disposition of her personal estate, namely, the law of her last domicile. Since no discernible New York policy or interest dictates the application of its law to invalidate the disposition by the English testatrix valid under her personal law—and, indeed, now valid under present New York law—such intention should be given effect.
I do not, of course, mean to suggest that New York law would not govern the validity and effect of the provisions of the trust indenture. That instrument was executed in 1917 against the *280 background of New York law, which Mrs. Bauer at that time undoubtedly intended would control. (See Hutchison v. Ross, 262 N. Y. 381; Shannon v. Irving Trust Co., 275 N. Y. 95.) However, I reject as insupportable any suggestion in Matter of New York Life Ins. & Trust Co. (209 N. Y. 585, supra), the authoritative precedent in this area, that the law governing the trust conclusively governs the exercise of the power of appointment in every case, even to the extent of overriding the manifest intent of the donor-donee to have the law of his last domicile apply so as to effect a valid exercise of the general power.
Nor does precedent commit this court to so inflexible a rule as underlies its decision. The rather cryptic opinion in Matter of New York Life Ins. & Trust Co. (209 N. Y. 585, supra) “ adopt [ed] the rule applied in Massachusetts and concur [red] in the reasoning of Chief Justice Gray in support of it in Sewall v. Wilmer (132 Mass. 131).” A reading of the Sewall case reveals that Chief Justice Gray, who wrote for the court, was not insensitive to the existence of factors to which I have adverted; thus, he noted (p. 135) that Mrs. Wilmer, the donee of the power,‘‘ had never owned the property in question, nor paid any consideration for it, nor had the power been created by herself ” (see, also, p. 136). Moreover, in Matter of Spitzmuller (304 N. Y. 608, affg. 279 App. Div. 233), a case in which the donor and the donee were the same, this court declined to apply the law of this State although the instrument creating the power expressly provided that it was to be “ governed * * * according to the laws * * * of New York”, and in Matter of Deane (4 N Y 2d 326, 331, supra) the court took pains to point out that the Spitzmuller case—upon which the appellants in Deane relied—was distinguishable on the ground (among others) that “ there the same person was both creator and donee of the poiver ”. (Emphasis supplied.)
In sum, then, I would disavow the rule requiring the inexorable application of the law governing the instrument creating the power and I would apply the law of the jurisdiction intended by the donor-donee to control—in the case before us, England which, quite obviously, has the principal, if not the sole, interest and concern with ‘ ‘ ‘ the outcome of *. * * *281 [this] litigation’”. (Auten v. Auten, 308 N. Y. 155, 161, supra.)
The order of the Appellate Division should be reversed and that of Special Term reinstated.
Judges Van Voorhis, Burke and Scileppi concur with Chief Judge Desmond ; Judges Dye and Fuld dissent in separate opinions in each of which the other concurs and Judge Bergan concurs in both.
Order modified in accordance with the opinion herein, and, as so modified, affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the trust fund.

. It should be noted that, under section 2041 of the Internal Revenue Code (U. S. Code, tit. 26, § 2041), the right to exercise the power is made taxable, for estate tax purposes, to the donee of the power.

. In support of this position, it is highly significant that, by virtue of section 141 of new article 5 of the Real Property Law (L. 1964, eh. 864, el$. June 1, 1965), property covered by a general power of appointment, “ not presently exercisable” (for instance, by will alone), can be subjected to the claims of the donee’s creditors where the donee was also the donor of the power.