■ In the Matter of the Accounting of FIRST CITY NATIONAL BANK OF BINGHAMTON, as Trustee of Express Trusts Created by Henry C. F. Staunton and Another, Deceased, Respondent. JOHN J. STAUNTON, Individually and as Executor of HENRY C. F. STAUNTON, Deceased, and FLORENCE E. STAUNTON, Deceased, et al., Appellants.— AULISI, J. Appeals by remaindermen from

judgments and orders of the Supreme Court settling respondent's accounts as trustee of two *inter vivos* trusts and awarding fees to the trustee's attorneys. Reciprocal *inter vivos* trusts were created by Henry Staunton and his wife, naming respondent as trustee. Upon the death of the surviving settlor, the trustee was to "pay over and deliver the principal (of both trusts) * * * to the remaindermen (who were settlors' five children)." The surviving settlor, Florence E. Staunton, died May 30, 1962 and the trustee was notified by telephone the next day. By June 7, 1962 the trustee had sold all the stocks and bonds in the corpus and invested the proceeds in United States Treasury bills. Written proof of Mrs. Staunton's death was not received by the trustee until July 19, 1962 and following a demand by the remaindermen most of the corpus of the trusts was distributed to them on September 14, 1962. Upon this final judicial settlement of the trustee's accounts the principal issue is whether the trustee should be surcharged, when, for the purpose of distribution it converted the securities in both trusts to cash, rather than determining if the remaindermen wanted distribution in kind. Appellants contend that the sale caused them to incur expenses for brokerage fees and also pay capital gains taxes. At no time had appellants demanded payment in kind and accordingly there was no obligation on the trustee to ascertain the wishes of the remaindermen upon the facts disclosed by the record before us. The language of the trust instruments does not mandate either a delivery of the principal in kind nor the offer of an option for such a distribution. The five remaindermen resided in four different States. The stock market had generally fallen from February through late May, 1962 declining almost 40 points on "Blue Monday" May 28, 1962, another 35 points on the Tuesday following, and recovering only slightly on May 31, 1962 a day after the date of Mrs. Staunton's death. By June 25, 1962 there had been a further drop of 60 points and the May 31 value was not regained until August. The words used "pay over and deliver the principal" have been interpreted to mean the payment is to be made in cash. "In the absence of a demonstrated express or reasonably implied * * * intention to the contrary, benefits are ordinarily payable in cash" (*Matter of Denari*, 165 Misc. 450, 453–454); *Matter of Campbell*, 144 N. Y. S. 2d 515; *Matter of Spitzmuller*, 279 App. Div. 233, affd. 304 N. Y. 608). The words "pay over and deliver" do not require permission of the remaindermen to sell. "Pay over" was used in other articles in the trust instruments in a context clearly meaning cash. The settlors were aware of the language to use if they wanted a restriction on the trustee's authority to sell principal because the instruments contain a provision that the trustee could not change investments during the settlor's life without the settlor's consent. Appellants' charge of procrastination by the trustee in making partial distribution is without merit. Less than two months elapsed from the time that the trustee received written proof of the death of the life beneficiary. This was not an unreasonble delay upon the facts before us. The appeal presents no other question requiring discussion. Orders and judgments affirmed, with costs to respondent payable from the trust. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Aulisi, J.